Jimmie A. CANTRELL, Relator,

v.

The Honorable Derwood G. JOHNSON, Respondent.

No. 10–89–210–CV.

Court of Appeals of Texas, Waco.

Feb. 15, 1990.

Kerry C. Hagan, McGregor, White, Malesovas & McSwain, Waco, for relator.

Aubrey R. Williams, Pakis, Cherry, Beard & Giotes, Waco, for respondent.

## OPINION

MEANS, Justice.

This is an original mandamus proceeding brought by Relator Jimmie Cantrell against Respondent, the Honorable Derwood G. Johnson, presiding judge of the 74th District Court, McLennan County, Texas. Cantrell is seeking a writ of mandamus requiring Judge Johnson to vacate his order compelling Cantrell to produce certain documents which Cantrell claims to be protected from discovery by the attorney/client privilege. *See* TEX.R.EVID. 503. Cantrell argues that the court applied an improper standard to the discovery at issue and that he is further entitled to mandamus relief due to the inadequacy of a remedy by appeal. The writ is conditionally granted.

Cantrell began working for McMurray Wood Products, Inc., in July 1978 and began negotiating for the purchase of that company prior to the first quarter of 1985. The negotiations resulted in Cantrell's entering into a stock option agreement, security agreement, and an employment and compensation agreement with Robert McMurray and McMurray Wood Products, Inc., in May 1985.

Pursuant to the terms of the stock option agreement, Cantrell paid $50,000 cash on May 16, 1985, to secure an option to purchase all outstanding shares of common stock of McMurray Wood Products, Inc. As a condition precedent to Cantrell's exercise of the option, the option agreement provided that Cantrell must remain employed by the company from May 16, 1985, until the option was exercised.

According to the employment and compensation agreement executed by Cantrell, he was to be employed by the corporation from May 1, 1985, until April 30, 1992, to manage its daily business affairs and operations unless terminated for cause pursuant to paragraph ten of the employment and compensation agreement. Robert McMurray was employed by McMurray Wood Products, Inc., as chairman of the board and as a director, having executed a similar employment and compensation agreement.

On October 17, 1986, Robert McMurray, in his capacity as chairman of the board of directors of the company, informed Cantrell of the termination of his employment. Cantrell states that he was never informed of the cause of his termination in accordance with paragraph ten of the agreement.

Cantrell contends that he fulfilled all conditions under the agreement. He further contends that because his employment was terminated by Robert McMurray, his performance under the option agreement—and specifically his ability to satisfy the condition precedent in the option agreement—was rendered impossible.

Cantrell initially filed suit against Robert McMurray and McMurray Wood Products, Inc., the real parties in interest herein, asserting causes of action for breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, common law fraud, negligent misrepresentation and violations of the Texas Deceptive Trade Practices Act (DTPA) in connection with his attempted purchase of McMurray Wood Products, Inc. *See* TEX.BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 1987). The defendants answered by affirmatively pleading laches and limitations under the DTPA and the Texas Civil Practice and Remedies Code. *See id.* at § 17.565; TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (1986). In his first amended petition, Cantrell dropped the DTPA allegations, but added an allegation of breach of fiduciary duty by McMurray Wood Products, Inc., and Robert McMur-

ray in wrongfully terminating his employment and rendering the exercise of the option impossible.

During negotiations with McMurray regarding the purchase of the business by Cantrell, Cantrell had represented himself. McMurray was represented in the negotiations and throughout document-preparation and execution by a local attorney. However, Cantrell did request that another local attorney, Tony Duty, review the documents prepared by McMurray to be executed in connection with Cantrell's purchase of the business and to make specific recommendations in light of Cantrell's interests.

Following the filing of suit, McMurray requested, first informally by telephone and letter, but followed by a formal request for production, that Cantrell produce "[a]ll documents, to include correspondence, received by Plaintiff from Tony Duty, or delivered by Plaintiff to Tony Duty, concerning the purchase of McMurray Wood Products, Inc. by Plaintiff, or the execution of the stock option agreement, security agreement, and employment contracts of Robert Wayne McMurray and Plaintiff dated May 16, 1985."

Cantrell formally objected to McMurray's request for production and twice filed motions for a protective order on the basis that the requested information was exempt from discovery under Rule 166b(3)(a), (e) of the Rules of Civil Procedure and was protected by the attorney/client privilege under Rule 503(b) of the Rules of Evidence. *See* TEX.R.CIV.P. 166b(3)(a), (e); TEX.R. EVID. 503(b). Cantrell affirmatively pleaded that he had not waived the attorney/client privilege. The court's order which is the basis of this mandamus action expressly states that no waiver of the attorney/client privilege by Cantrell occurred.

The court held a hearing on Cantrell's objections and motion for a protective order, and then granted a rehearing at which he conducted an *in camera* inspection of the five documents in question tendered to the court by Cantrell. The documents which Cantrell sought to protect from discovery by the attorney/client privilege were: (1) a letter from Cantrell to attorney Duty dated November 9, 1984, advising Duty of the status of the negotiations and explaining to him the scope of the agreement as it had been presented to Cantrell; (2) a letter from Cantrell to attorney Duty dated January 28, 1985, outlining several problems relating to the original agreement between the parties and the documents prepared by McMurray; (3) a note to attorney Duty setting forth some of the Cantrells' thoughts and concerns regarding the terms of the option agreement and employment contracts; (4) a handwritten memorandum reflecting comments voiced by Duty regarding the option agreement and employment contracts and specifically memorializing a conversation between Cantrell and Duty regarding the documents subsequently executed by Cantrell; and (5) notes written by Cantrell to memorialize information requested by Duty from Cantrell prior to his preparation or review of the option agreement and employment contracts. Cantrell's affidavit in support of his second motion for protective order states that documents one through four were prepared by his wife in her handwriting.

Cantrell stated in his affidavit that in 1984 and 1985 he and his wife were represented by Duty regarding a contemplated business transaction between Cantrell, Robert McMurray and McMurray Wood Products, Inc. Cantrell swore that Duty was retained as his attorney to evaluate legal documents relating to his purchase of McMurray Wood Products, Inc. Cantrell acknowledged that although Duty did not negotiate directly with Robert McMurray or with the company, Mr. Duty did advise Cantrell of particular matters incident to the negotiations. Cantrell stated that the five documents tendered in a sealed envelope to the court pursuant to the second motion for protective order were prepared by him for the purpose of enabling Duty to render legal services and advice to him. The affidavit contained a listing of the documents sought to be discovered and the

purpose of each. Cantrell's affidavit further reflected that the five documents were not intended to be disclosed by him to any party other than to his wife and attorneys and any disclosure to his wife was made to facilitate the rendition of legal services to the Cantrells.

After hearing argument of counsel, the court expressly found that Cantrell had not waived the attorney/client privilege as to documents one, two and three; however, the court ordered Cantrell to produce those documents for McMurray, citing generally *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985), and stating that documents one, two and three were not protected by the attorney/client privilege. The court ruled that documents four and five were not discoverable by McMurray, finding that those documents were protected by the attorney/client privilege. The court's order also provided that McMurray would be allowed to depose Duty as requested but that the order would not prejudice Cantrell's right to interpose objections or instruct the witness not to answer on the basis of any privilege and that Cantrell's objections should be preserved and presented to the court by means of certification of questions by the court reporter.

Cantrell claims that, notwithstanding the Supreme Court's opinion in *Ginsberg*, documents one, two and three are exempt from discovery pursuant to Rule 166b(3) of the Rules of Civil Procedure and because the attorney/client privilege applies. *See* TEX.R.CIV.P. 166b(3); TEX.R.EVID. 503. Cantrell also asserts that the documents in question are not relevant or reasonably calculated to lead to the discovery of admissible evidence and are therefore properly excluded from discovery. Cantrell argues that he has alleged no causes of action dealing with the negotiation and execution of the documents in question but that all of his claims address the performance of the parties, making the documents sought by McMurray irrelevant to any claims in this suit.

McMurray points to the fact that Cantrell's allegations are not confined to breach of contract and the alleged violation of express contractual terms; rather, Cantrell also seeks to recover for his alleged detrimental reliance upon misrepresentations made by Robert McMurray and the corporation with the intent to defraud Cantrell in connection with the employment agreements executed by Cantrell and by Robert McMurray. McMurray argues that because justifiable reliance is a material element of two causes of action asserted by Cantrell—fraud and negligent misrepresentation—the evidence sought is relevant because it would tend to negate that particular element of those causes of action. McMurray asserts that the evidence in question is relevant regarding the breach of contract claim as well, because the evidence sought would clarify the "duties, obligations and assignments" of Robert McMurray to which the employment and compensation agreement generally refers and for the breach of which Cantrell has sued. McMurray also takes the position that the documents are relevant to McMurray's limitations defense because they contain evidence of when Cantrell first knew or should have known of the intentions of Robert McMurray with respect to his "duties and obligations" under his employment and compensation agreement. McMurray additionally bases his right to production of the documents on an expanded interpretation of the Supreme Court's holding in *Ginsberg*, 686 S.W.2d at 108.

In *Ginsberg*, the primary issue was whether the plaintiff would be allowed to use offensively the psychotherapist-patient privilege of Rule 510 of the Rules of Evidence, after affirmatively invoking the jurisdiction of the court, to shield from discovery information both material and relevant to the defenses urged by the defendant. The plaintiff in *Ginsberg* had filed a trespass to try title suit challenging the validity of two deeds executed in January and March of 1972. The plaintiff claimed the first deed had been forged and that she had been fraudulently tricked into signing the second deed because she could not recall signing it. The plaintiff testified without objection that she had undergone psychiatric treatment in 1972 and subsequent years. The defendant then sought to dis-

cover the records relating to that treatment. The plaintiff objected on the basis of the psychotherapist-patient privilege.

The Supreme Court held in *Ginsberg* that where medical records concerning communications between the plaintiff and her psychiatrist regarding a business transaction that was the subject matter of her claim against the party seeking discovery were examined *in camera* by the trial court and found to be relevant to the subject matter of the suit, the trial court properly exercised its discretion in deeming the medical records discoverable. *Id.*, at 108. The court in *Ginsberg* held that the plaintiff's offensive use of the psychotherapist-patient privilege exceeded the intended scope of Rule 510; however, the court warned that its holding should not be construed as endorsing litigants to engage in "fishing expeditions" into privileged matters. *Id.*

■ Contrary to *Ginsberg*, the trial court in this case made no express finding of the relevance of the documents in question to the issues in this case. In addition, the court specifically found in this case that Cantrell had *not* waived the attorney/client privilege. Even if it is assumed that the documents in question are relevant to McMurray's defensive claims, such relevance does not automatically outweigh the public interest in preserving the purpose of the attorney/client privilege; that is, to protect communications intended to be confidential from unintended disclosure and thus promote the unrestricted communications necessary between attorney and client. *See Mitchell v. Superior Court (Shell Oil Co.)*, 37 Cal.3d 591, 208 Cal.Rptr. 886, 890, 691 P.2d 642, 646 (1984). *See generally*, R. Ray, *Texas Practice, Law of Evidence* § 421 (Texas Practice 3d ed. 1980). This case does not present a situation in which proof of defenses might be entirely precluded if the discovery in question is not permitted. *See Ray v. Beene*, 721 S.W.2d 876 (Tex.App.—Houston 1986, writ ref'd n.r.e.). Cantrell's knowledge and state of mind may be litigated without undermining the attorney/client privilege. By the same token, Cantrell's allegations

of fraud do not amount to an implied waiver of the attorney/client privilege. Though Cantrell's state of mind may be a disputed issue, that fact does not effect a waiver of his privilege protecting confidential attorney/client communications. No statutory waiver exists under these circumstances and we find no necessity for this court to create a nonstatutory waiver. *See Mitchell*, 208 Cal.Rptr. at 895, 691 P.2d at 651.

■ The general rule of attorney/client privilege reads in pertinent part as follows: "A client has a privilege to refuse to disclose and prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative...." TEX.R.EVID. 503(b). According to the rule, "[a] communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services...." TEX.R.EVID. 503(a)(5). Although the word "communication" is not defined in the rule, both written and oral communications designed to further the rendition of legal services are encompassed. *See Suddarth v. Poor*, 546 S.W.2d 138, 141 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Clearly, the basic purpose of the privilege is to protect the confidential relationship between clients and their attorneys in order to promote thorough and open discussion of the facts, circumstances, and strategy of particular legal matters. Nor should the type of communication contemplated by the plain language and intent of the rule be interpreted to mean only those communications running from attorney to client rather than confidences imparted by the client to the attorney for the purpose of assisting the attorney in giving the client the legal advice he seeks. The confidential communication to be furthered by the privilege is clearly a two-way street once the attorney/client relationship has arisen. *See Dewitt and Rearick v. Ferguson*, 699 S.W.2d 692, 693 (Tex.App.—El Paso 1985, no writ).

McMurray has not disputed the existence of the attorney/client relationship between Cantrell and Duty, nor is the specific time of inception of that relationship an issue here. McMurray does not dispute that Cantrell properly invoked the attorney/client privilege and that he supported it by sufficient evidence when seeking the protective order. McMurray simply bases his alleged entitlement to the documents in question upon the reasoning set forth in *Ginsberg* under Rule 510 of the Rules of Evidence. *See Ginsberg*, 686 S.W.2d at 107–108.

The *Ginsberg* holding must be limited to the facts of that case and does not control the disposition of this matter. *Ginsberg* has never been applied to the attorney/client privilege by the Texas Supreme Court. The court's express finding of relevance in *Ginsberg* was essential to the balancing of the competing public and private interests. Though not discussed by the Supreme Court in *Ginsberg*, Rule 510 nevertheless includes a specific "offensive/defensive" exception which prevents a plaintiff from seeking to recover damages for alleged injuries such as mental anguish but at the same time attempting to suppress communications or records relevant to his mental and emotional condition. TEX.R.EVID. 510(d)(5). However, Rule 503 does not contain a similar exception. Absent a specific exception, the attorney/client privilege may not be waived on the basis of an unpleaded, implied exception and a party may not attempt to use an unwritten exception to discover confidential attorney/client matters involved in subsequent litigation. In light of the court's express finding in its order that no waiver of the privilege had occurred, Cantrell neither expressly nor impliedly waived his right to claim the attorney/client privilege. In conjunction with the adoption of the Texas Rules of Evidence, specific privileges and exceptions have been created by the Supreme Court. This court is not free to find exceptions which have not been specifically delineated in a particular rule governing privilege. *See Texas Utilities Elec. Co. v. Marshall*, 739 S.W.2d 665, 667 (Tex.App. —Dallas 1987, no writ).

We believe the trial court acted without reference to any guiding rules and principles in prohibiting discovery of documents four and five but allowing discovery of documents one through three. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1986). In arbitrarily distinguishing between confidential communications from Cantrell to his attorney reflecting Cantrell's thoughts and concerns regarding the documents Duty was retained to examine and made to facilitate the rendering of legal services, as opposed to memoranda prepared by Cantrell and his wife of conversations with and the advice of Duty with respect to the same documents, the court clearly abused its discretion. Furthermore, none of the specific exceptions to the attorney/client privilege in Rule 503 allow the discovery sought in this case.

The writ of mandamus is conditionally granted. We assume the trial court will vacate his order allowing discovery of documents one, two and three in accordance with this opinion; otherwise, the writ will issue.