**Alan D. WESTHEIMER, Pannel Kerr Forster and Westheimer & Company, P.C., Relators,**

v.

**The Honorable Geraldine B. TENNANT, Respondent.**

**No. C14–91–01056–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 21, 1992.

Kathleen Walsh Beirne, John H. Glover, Houston, for relators.

Sherry B. Angelo, Houston, for respondent.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Relators are accountants who have been sued for professional malpractice based on their advice concerning a failed tax shelter. To further their discovery, they petition us for a writ of mandamus compelling the trial judge to allow them to depose an attorney-witness. The prospective witness, a tax specialist, had previously counseled with the plaintiff/real party-in-interest about the same tax shelter. Relators assert that the attorney's prior advice is critical to their defense and they are entitled to it; plaintiffs assert that the attorney-client privilege protects the advice from disclosure. In the court below, the Honorable Geraldine Tennant ruled that the attorney-client privilege prevailed and denied relators' motion to compel the deposition. We find that the trial court abused her discretion and conditionally grant the writ to allow the deposition.

Real parties-in-interest, Dr. Mahdi Al-Bassam and Gary H. Knostman, bankruptcy trustee for Dr. Al-Bassam's Chapter 7 bankruptcy case, filed a lawsuit in 1987 against relators, Alan D. Westheimer, Pannell Kerr Forster and Westheimer & Company, P.C., alleging professional accounting malpractice in providing investment advice about an "Art Master" tax shelter (Art Master). After Dr. Al-Bassam invested money in this tax shelter, the Internal Revenue Service ruled that the Art Master was a fraudulent investment and assessed a tax liability against him. Relators filed a general denial and plea in abatement.

During the discovery phase of the lawsuit, relators' research led them to believe that Ruben Leonard Weiner, an attorney and certified public accountant, had advised Dr. Al-Bassam to invest in Art Master before Dr. Al-Bassam established a professional relationship with relators. Relators filed a notice to take Leonard Weiner's oral deposition and attached a subpoena duces tecum for production of, among other things, a December 1, 1981, invoice sent to Dr. Al-Bassam by Weiner. They also requested any documents, letters, or notes taken at any meeting which included Dr. Al-Bassam and concerned the Art Master program, or other tax-oriented investments. On the scheduled deposition day, the real parties-in-interest filed a motion for protective order stating that the attorney-client privilege precluded the disclosure of the requested information from Mr. Weiner. During the deposition, Mr. Weiner produced the invoice dated December 1, 1981, in the amount of $400 which had been sent to Dr. Al-Bassam along with a copy of a canceled check in that amount, reflecting Dr. Al-Bassam's payment to Mr. Weiner. This invoice stated:

> Phone consult with Norman Ross. Skimmed the books prepared by Mr. Shuman describing the details of the art deal and the mining deal at our office and briefly reviewed recent developments in the law relating to certain tax aspects affecting each of them. Later, met with Dr. and Mrs. Al-Bassam, Norman Ross and Samuel Shuman at your office discussing the tax aspects of those two investments.

> $400.00

*Payment of this invoice is deductible.

Mr. Weiner identified Norman Ross as an insurance agent who called himself a financial planner and Mr. Shuman as a tax shelters promoter whom he consulted before the meeting specified in the December 1, 1981, invoice. Mr. Weiner stated he did not send any invoices to Mr. Ross or Mr. Shuman. After counsel for Dr. Al-Bassam asserted the attorney-client privilege on his behalf, Mr. Weiner refused to answer any other questions relating to Art Master.

882

Relators announced the deposition was concluded pending the trial court's decision on the motion for protective order.

At this time, counsel for real parties-in-interest proceeded to question Mr. Weiner about the meeting mentioned in the invoice. Mr. Weiner in response stated he was unsure of the meeting's exact date and could not find the file, but he "vividly" remembered the meeting as a "very unique experience." Although he knew other people involved in art tax shelters promoted by Sam Shuman, he was not sure if they specifically invested in Art Master. Mr. Weiner also stated Dr. Al–Bassam had retained him within a week of the meeting. He also indicated that relator, Mr. Westheimer, informed him that Dr. Al–Bassam retained relators sometime after that meeting or "it might have even been the next year." When asked if he rendered services to Dr. Al–Bassam as an attorney, he responded that he gave "advice."

Relators filed a motion to compel Mr. Weiner in deposition on the grounds that his testimony was essential to their defense, because Dr. Al–Bassam consulted and obtained advice about Art Master from him at least 6 years prior to the filing of the lawsuit. Real parties-in-interest responded by again asserting the attorney-client privilege. After a hearing, respondent signed an order denying relators' motion to compel. Relators contend mandamus should properly issue because respondent's denial of their motion was an abuse of discretion, in that it allowed the real parties-in-interest to use the attorney-client privilege to offensively shield from discovery material information. They contend it also deprived them of the opportunity to preserve Mr. Weiner's testimony for appellate review. For the reasons hereinafter set out, we conditionally grant the writ.

■ To issue writs of mandamus, we are guided by specific and narrow standards. We may issue all writs of mandamus which are agreeable to the principles of law regulating those writs. TEX.GOV'T CODE ANN. § 22.221(b) (Vernon 1988). Mandamus issues only to correct trial court actions where there has been a clear abuse of

discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court clearly abuses its discretion if it reaches an arbitrary and unreasonable decision that amounts to a clear and prejudicial error of law. *Id.* The Texas Supreme Court recently differentiated between a trial court's discretion in resolving factual issues and determining legal principles in *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992). The reviewing court may not substitute its judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's discretion. *Id.* at 472. On the other hand, the court states:

[R]eview of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts ... and may result in appellate reversal by extraordinary writ.

*Id.* An appeal would not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error. *Id.* at 475. The remedy by appeal may be inadequate where the trial court disallows discovery and the missing discovery cannot be made part of the appellate record. *Id.*

■ Relators allege the trial court abused its discretion in permitting real parties-in-interest to assert the attorney-client privilege during the deposition because the underlying malpractice suit is based on alleged prior advice by Mr. Weiner concerning the Art Master investment. Relators argue that the real parties-in-interest waived this privilege by filing suit, and thus placing all other sources of advice relating to Art Master in issue. We agree.

Rule 166b (1) of the Texas Rules of Civil Procedure provides that permissible forms of discovery include depositions, interrogatories and requests for production. TEX. R.CIV.P. 166b (1). Rule 166b (3)(e) exempts any matter protected from disclosure by privilege. TEX.R.CIV.P. 166b (3)(e). The lawyer-client privilege provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself ... and his lawyer ...

TEX.R.CIV.EVID. 503(b). A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. TEX.R.CIV.EVID. 503(a)(5). If a trial court determines that an in camera inspection and review by the court of some or all of the requested discovery is necessary, the objecting party must segregate and produce the discovery. TEX.R.CIV.P. 166b (4).

Relators rely on *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105 (Tex.1985) for their allegation that the real parties-in-interest have asserted the attorney-client privilege offensively as a "sword and a shield." In *Ginsberg,* the supreme court determined a plaintiff did not have the right to use the psychotherapist-patient privilege offensively to shield information which would be material and relevant to the defendant's defense of claims made against him by the plaintiff. *Id.* at 106. The court noted:

A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.

*Id.* at 108 (quoting *Pavlinko v. Yale–New Haven Hospital,* 192 Conn. 138, 470 A.2d 246 at 251 (1984)). While the court recognized the plaintiff's essential right to assert the privilege, it noted that a plaintiff may be forced to elect whether to claim his privilege or surrender his claim based on principles of "fundamental fairness." *Id.* at 107. The *Ginsberg* court commented that this theory has also been applied in cases involving the Fifth Amendment privilege against self-incrimination and the physician-patient privilege. *Id.* at 107–108.

The *Ginsberg* reasoning has further been extended to the attorney-client privilege in *DeWitt and Rearick, Inc. v. Ferguson,* 699 S.W.2d 692 (Tex.App.—El Paso 1985, orig. proceeding) and *Parten v. Brigham,* 785 S.W.2d 165 (Tex.App.—Fort Worth 1989, orig. proceeding). There, the courts determined a plaintiff's attempt to assert the attorney-client privilege as an offensive tool was prohibited and the plaintiff was forced to elect to claim this privilege or abandon the claim. *Parten v. Brigham,* 785 S.W.2d at 168.

Real parties-in-interest maintain that the relevancy of Mr. Weiner's testimony about Art Master does not automatically outweigh the interest in preserving the attorney-client privilege, relying on *Cantrell v. Johnson,* 785 S.W.2d 185 (Tex.App.—Waco 1990, orig. proceeding). They contend that their use of the attorney-client privilege is neither offensive, nor waived, in the underlying suit. Their reliance on *Cantrell* is misplaced. In *Cantrell,* the court determined that the *Ginsberg* holding must be limited to the specific facts of that case and should not extend to the attorney-client privilege. *Id.* at 190. The court stated that Rule 510 of the Texas Rules of Evidence, which concerns the confidentiality of mental health information, includes a specific "offensive/defensive" exception. This exception prevents a plaintiff from seeking damages for alleged injuries such as mental anguish while attempting to suppress communications or records relevant to his mental and emotional condition. *Id.; see* TEX.R.CIV.EVID. 510. Since the attorney-client privilege in Rule 503 does not contain a similar exception, the court concluded the attorney-client privilege may not be waived on the basis of an "implied" exception to discover confidential attorney-client matters involved in subsequent litigation. *Cantrell* at 190; *See* TEX.R.CIV.EVID. 503. We find the *Cantrell* court's requirement of a specific exception against offensive use of the attorney-client privilege is a far too narrow reading of *Ginsberg.* We conclude the *Ginsberg* rationale is grounded primarily on the principle of "fundamental fairness," rather than on the express exception provided in Rule 510(d)(5). Principles of fundamental fairness aimed at preventing a litigant from offensively hiding behind a privilege, in order to hamstring an

opponent, do not need specific statutory wording to make them legally effective. It is uniquely the business of the courts to give such principles life by applying them when appropriate. The Supreme Court in *Ginsberg* applied such principles to prevent the offensive shielding of relevant information by use of the psychotherapist-patient privilege. *Ginsberg* at 107. We conclude that such a tenet of fundamental fairness is no less applicable to offensive concealment of material information behind the attorney-client privilege.

We now address the facts and circumstances of the instant case to determine whether real parties-in-interest have attempted to withhold essential and relevant information necessary to relators' defense against the underlying lawsuit. Real parties-in-interest initiated an accounting malpractice lawsuit against relators for "representation made, advice given and facts concealed in connection with the purchase of goods and services which were supposed to constitute a tax shelter investment." Mr. Weiner testified he was employed by and gave advice to Dr. Al–Bassam. He produced an invoice indicating he discussed the tax aspects of the Art Master investment at a meeting with Dr. and Mrs. Al–Bassam, Norman Ross and Samuel Shuman. Since Mr. Weiner apparently advised Dr. Al–Bassam about the same investment that forms the basis of this lawsuit, we believe the real parties-in-interest have offensively asserted the attorney-client privilege to shield relevant facts by adversely thwarting relators from discovery that could seriously impact the merits of their lawsuit. Even the court in *Cantrell* stated its case was "not a situation in which proof of defenses might be entirely precluded if the discovery in question is not permitted." *Cantrell* at 189. That is not the case here. Relators would be deprived of their right to discover pertinent and perhaps favorable evidence if we allow the real parties-in-interest to seek legal relief against them in our courts, but draw a legal curtain around otherwise proper evidence which may bear on the merits of the lawsuit. As important as the attorney-client privilege is, it cannot be used to subvert the advocacy system that spawned it. Prior advice received by Dr.

Al–Bassam on the very matter asserted in his lawsuit cannot be shielded from discovery. Our rules of civil procedure, and the federal rules upon which they are based, mandate a flexible approach to discovery. *Walker* at 471. A party may seek any information which "appears reasonably calculated to lead to the discovery of admissible evidence." TEX.R.CIV.P. 166b(2)(a). Unlike *Cantrell*, real parties-in-interest here neither requested a hearing on the attorney-client privilege nor produced any documents for in camera inspection.

Our holding in this matter in no way precludes an in camera inspection by respondent of any records that may be available to weed out non-relevant matters. Nor do we preclude respondent from any other protective order to insure that the deposition is confined to testimony relevant to attorney Weiner's advice to Dr. Al–Bassam concerning the Art Master tax shelter.

Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate her order and to grant the motion to compel Mr. Weiner to answer relators' deposition questions and produce the information requested by them. We presume respondent will comply with the terms of this judgment. Mandamus will issue only should she fail to do so.