Affirmed and Majority Opinion and
Concurring and Dissenting Opinion filed December 14, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00267-CV



Jose L.
Elizondo and Guillermina Elizondo,
Appellants/Cross-Appellees 

v.

Ronald Krist,
The Krist Law Firm, P.C., Kevin D. Krist and William T. Wells, Appellees/Cross-Appellants 



On Appeal from
the 129th District Court

Harris County, Texas

Trial Court
Cause No. 2007-50121



 

CONCURRING AND DISSENTING OPINION

            I
agree with the majority on the fifth issue concerning fee forfeiture.  But
because I believe the Elizondos presented some evidence of damages in response
to the no-evidence motion for summary judgment on damages, I respectfully
dissent.  The Elizondos have made the following factual allegations:

 

March 28,
2005:             Jose signed a power of attorney with Wells.

August, 31,
2005:           Wells sent a $2,000,000 demand letter to BP on behalf of both
Jose and Guillermina.

December 9, 2005:         BP
offered $50,000 to settle the Elizondos’ case.

December 21,
2005:      Wells associated Kevin Krist, Ronald Krist and the Krist Law Firm as
additional counsel for Wells’s four BP cases.

January 31, 2006            Ronald
and Kevin Krist met with BP to settle Wells’s cases.

February 22,
2006          Jose signed a release and settlement with BP for $50,000. The
release included a signature page for Guillermina but she never signed the
release. The settlement included a provision that BP would settle Jose’s
worker’s compensation lien.

November
2006              Ronald Krist and the Krist Law Firm began representing BP in
connection with the incident.

March 23,
2007              The statute of limitations ran on Guillermina’s claim.

June 13,
2008                 BP sent the Krist Law Firm notice that Jose’s worker’s
compensation lien was paid.

The
Lawyers contest that they ever represented Guillermina[1] and
contend that their representation of Jose ended when he signed the release February
22, 2006.[2]


A.        The trial court abused his discretion in
striking Gonzalez’s affidavit.

            The
Elizondos sued the Lawyers, asserting numerous causes of action including legal
malpractice and breach of fiduciary duty.  Citing Burrow v. Arce, 997
S.W. 2d 229 (Tex. 1999), the majority concludes that the affidavit of Gonzalez
was too conclusory to be evidence of damages at all.  In Burrow, the
Supreme Court concluded that the affidavit of attorney Malinak was insufficient
to support the lawyers’ burden of proof in an affirmative motion for summary
judgment.  After concluding that the affidavit was conclusory, the court noted
ways in which the affidavit could have presented a sufficient basis for the
opinion, stating, “Malinak might have analyzed the Clients’ injuries by type,
or related settlement amounts to medical reports and expenses, or compared
these settlements to those of similar claims, or provided other information
showing a relationship between the plaintiffs’ circumstances and the amounts
received.  He did not do so.”  Id. at 236.  In my opinion, Gonzalez’s
affidavit is not similarly deficient and presented the information needed to
support his opinion on the value of the Elizondos’ claims.  A conclusory
statement is one that does not provide the underlying facts to support the
conclusion.  Rizkallah v. Conner, 952 S.W. 2d 580, 587 (Tex.
App.—Houston [1st Dist.] 1997, no writ).  Gonzalez’s affidavit provided the
underlying facts to support his opinion and therefore was not conclusory.  See
Hou-Tex, Inc. v Landmark Graphics, 26 S.W. 3d 103 (Tex. App.—Houston [14th
Dist.] 2000, no pet.).  Thus, I would hold that the trial court abused its
discretion in striking portions of the affidavit.  See Allbritton v.
Gillespie, Rozen, Tanner & Watsky, P.C., 180 S.W.3d 889, 894 (Tex.
App.—Dallas 2005, pet. denied).

            Gonzalez
provided the following information in his affidavit: 

·       
Gonzalez worked for both the Ammons Law Firm and Brent Coon &
Associates on their BP dockets. 

·       
Ammons had approximately 125 BP cases and Brent Coon had over 400
claimants. 

·       
Gonzalez was appointed by the 212th District Court as Plaintiffs’
liaison counsel for the BP ligation. 

·       
At both law firms, a confidential spreadsheet was used to track
each case, including settlement demands and offers. 

·       
Gonzalez was “intimately involved on a day to day basis with the
settlement process.” 

·       
He participated in settlement conferences with Bill Noble with BP
and their lawyer, David Salyer. 

·       
During the September 2007 BP trial, Gonzalez was ordered to meet
with Nobel and Salyer in the judge’s chambers to attempt to settle as many
cases as possible. 

·       
Gonzalez participated in mediation of the BP cases, mediating ten
cases a day.

            Gonzalez
also testified that BP and the lawyers focused on certain criteria for the
purpose of determining the value of a case.  The factors were:

·       
The victim’s proximity to ground zero;

·       
The length of time between the injury and the report of the
injury to a supervisor;

·       
Corroboration of the victim’s alleged proximity to ground zero
and the time the injury was reported to a supervisor or to management;

·       
The victim’s age;

·       
The victim’s past and future wage-earning capacity and wage loss;

·       
The injuries alleged, including the nature, extent, duration, and
biomechanics of the injuries;

·       
The medical treatment received, including the need for surgical
intervention;

·       
Whether the victim was single or married, i.e., whether there
were associated claims for loss of consortium; and

·       
Onsite vs. offsite claims.

Gonzalez
then testified that he reviewed the following specific information concerning
Jose’s claim:

·       
On or about March 23, 2005, Jose was in the employ of Altair
Strickland, a subcontractor providing services at the BP Texas City facility.  At
that time, he was 37 years old.

·       
Jose had just left the Altair Strickland trailer and was in the
street between the 180M and the Ultracracker units and was heading toward the
Ultracracker unit when the explosion took place.  This location is
approximately 200 to 300 feet from the blowdown stack.  The force of the
explosion blew him a number of feet into a port-a-potty. 

·       
Jose was near Mr. Eamello at the time of the blast.

·       
Jose sustained injuries to his neck and lower back and suffered such
mental anguish and emotional distress that he was considered to have post-traumatic
stress disorder.

·       
He was first treated for his neck and back injuries by Dr. Ron
Kirkwood and Dr. English of Kirkwood Medical Associates on March 26, 2005.

·       
Jose saw Dr. David Winberly at Fondren Orthopedic on April 1,
2005, for complaints of neck and lower back pain, and had a follow-up visit on
June 7, 2005 for persistent neck and back pain.

·       
He received physical therapy at TIRR twelve times over the
six-week period between April 7 and May 19, 2005.  

·       
Jose was first treated for mental anguish or emotional distress
by Dr. Susana Rosin on May 6, 2005. He attended additional therapy sessions on
May 20, July 6, and August 3, 2005.  His treatment lasted approximately three
months.

·       
Jose is married to Guillermina Elizondo, and they had four
children at the time of the explosion.  They currently have five children.

·       
On March 23, 2005, Jose earned about $23 per hour and worked
approximately 50 to 60 hours each week.

·       
Jose missed work as a result of the March 23, 2005 events.

·       
He has not been physically or medically restricted from working,
but he was injured in the explosion.

            Gonzalez
noted that when a husband is injured in a workplace accident, his wife has an
independent claim for loss of consortium.  Gonzalez had handled spousal claims involving
similar injuries.  He believed that the general value of Jose and Guillermina’s
claims by way of settlement or verdict was in the range of two to three million
dollars, and some part of this total value would be attributable to
Guillermina’s individual claim.

            Unlike
the affidavit in Burrow, Gonzalez’s affidavit provided the criteria used
to evaluate the claims and the specific facts of the Elizondos’ claims to
support his opinion.  The only information missing from his affidavit was the
names of the other plaintiffs whose settlements formed the basis of Gonzalez’s
comparison, but because all of the BP settlements were confidential, Gonzalez could
not reveal the amount paid to settle the claims of a specific plaintiff.  

B.        The Lawyers refused to produce information
about other settlements.

            During
the course of discovery, the Elizondos tried to obtain settlement information about
other plaintiffs.  Through written discovery, they first sought the settlement
information for the other three cases that the Lawyers handled.  The Lawyers
objected that the information was irrelevant and privileged.[3]  The
Elizondos next requested any settlement matrix or grid that was prepared by BP
and given to the Lawyers while they were representing the Elizondos, and the
Lawyers raised the same objections.  The Elizondos tried to obtain the
information through depositions of third parties, including other BP attorneys,
but the Lawyers objected to these depositions as well.  The Elizondos asked for
a court order to allow Gonzalez[4]
to reveal specifics from the BP settlements, and the Lawyers opposed the
order.  

            During
Wells’s deposition, his attorney refused to allow him to answer any question
about the settlements of the other cases that Wells handled.  During Ronald
Krist’s deposition, his lawyer objected on the basis of privilege to any
information about the amount paid to settle any of the BP cases or BP’s ranking
system for settlement that was disclosed to other plaintiffs or their counsel. 

            It would be fundamentally unfair for the
Lawyers to thwart discovery as to other settlements and at the same time use
the lack of that information to strike Gonzalez’s affidavit.  Cf. Ginsberg
v. Fifth Court of Appeals, 686 S.W. 2d 105, 107–08 (Tex. 1985); Westheimer
v. Tennant, 831 S.W. 2d 880, 884 (Tex. App.—Houston [14th Dist.] 1992, no
writ) (a party seeking affirmative relief cannot assert privilege to prevent
the adverse party from obtaining evidence in its defense; the claimant must choose
between asserting its claim or asserting privilege, but cannot do both).  The
BP release included a confidentiality provision but allowed for disclosure
pursuant to court order.  The Lawyers could have joined the Elizondos in their
request for such a court order but they did not. 

Moreover, the rationale for
excluding Gonzalez’s opinion—i.e., that an attorney who does not reveal the confidential
amounts paid to specifically-identified plaintiffs cannot express an opinion as
to whether another plaintiff received a fair settlement of his claims arising
from the same event—applies equally to the defendant Lawyers.  Under this
reasoning, all of the defendant Lawyers in this case are similarly barred from expressing
an opinion as to whether Jose received a fair settlement.

C.        The non-stricken portions of the
affidavit provide some evidence of damages.

            Even
if the trial court did not abuse its discretion in excluding some portions of
Gonzalez’s affidavit, the remaining statements in the affidavit provide some
evidence of damages.  Gonzalez opined that the case “had value substantially in
excess of BP’s best offer.”  He described the settlement as “inadequate,” “very
inadequate,” not “fair and reasonable” and “basically for nuisance value.”  The
foundation as outlined above supports his opinions and provides some evidence
of damages. 


D.        Guillermina’s testimony provides some
evidence of damages.

            The
no-evidence motion for summary judgment on damages did not address causation;
it only addressed the existence of damages.  Thus, Guillermina was not required
to prove through expert testimony that the Lawyers breached the standard of
care, that the breach was a proximate cause of damages and that the damages are
collectible.  She was not required to prove what BP would have settled her case
for because that implicates causation.  In a claim for loss of consortium, there
is no need for expert testimony on the issue of damages; testimony that the
primary victim’s injuries interfere with family activities is sufficient.  See
Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 328 (Tex. 1993)
(testimony that, as a result of wife’s injuries, couple no longer engages in
their former outdoor activities and that travel has become difficult is “at
least some evidence” of loss-of-consortium damages).  A jury can evaluate the
plaintiff’s own testimony and determine whether or not the claim had a monetary
value.  Guillermina’s testimony provides some evidence of damages for loss of
consortium that a jury could evaluate.

On
this record, I would conclude that the Elizondos presented some evidence of
damages, and thus, the judgment cannot be affirmed on this basis.  I therefore would
address the remaining points of error and cross-points not reached by the
majority. 

 








                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Brown,
and Christopher. (Brown, J., majority.)

 

 









[1]
The trial judge denied a motion for summary judgment on this point.  The
appellees have asserted this as a cross-point on appeal.





[2]
The trial judge granted a motion for summary judgment in favor of the Lawyers
on this point.  The appellants have also appealed this ruling.





[3]
The amount that BP paid to another client is not privileged information because
a third party—BP—knows the amount.  Similarly, a settlement grid prepared by a
third party is not privileged.





[4]
Gonzalez was willing to provide the settlement information if he had the
protection of a court order.  The BP settlements were confidential but subject
to disclosure under court order.