**Katherine Jean Foltz PARTEN, Relator,**

v.

**The Honorable William H. BRIGHAM, Senior Sitting Judge for the 233rd District Court, Respondent.**

No. 2–89–226–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 29, 1989.

Neil S. Callaway, Law Offices of John R. Lively, Fort Worth, for relator.

Robert T. Stites, Stites, Hoover, Clark & Smith, P.C., Fort Worth, for respondent.

Before JOE SPURLOCK, II, KELTNER and LATTIMORE, JJ.

KELTNER, Justice.

This mandamus proceeding arises from a bill of review proceeding to set aside a divorce decree because of the husband's alleged fraud and misrepresentation in concealing community assets.

The primary issue is whether the trial court abused its discretion in ordering the production of the wife's attorney's entire file in the underlying divorce proceeding despite the wife's claim of the attorney-client privilege. The secondary issue concerns the application of the offensive use of the privilege doctrine as enunciated by the supreme court in *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex. 1985).

We hold that while the trial court was correct in its application of the offensive use of the privilege doctrine, enunciated by *Ginsberg*, the trial court erred in ordering that the attorney's entire file was discoverable.

We are hampered in our consideration of this case by lack of a statement of facts from the trial court. Nonetheless, the parties have sworn to a number of undisputed facts in their pleadings before this court as allowed by TEX.R.APP.P. 121.

The relator, Katherine Parten, and the respondent, Keith Parten, were divorced in 1983. The relator was represented by attorney John Lively. The respondent was not represented by counsel.[1]

A decree of divorce was entered in which both parties were awarded certain community property. Additionally, certain language indicating that all property, "not specifically awarded to either party by this decree shall remain the joint property of the parties" was stricken from the divorce decree and apparently initialed by both parties. Instead, handwritten language was added to the decree providing that "all possessions not specifically listed" were awarded to the respondent. This addition to the decree is also apparently initialed by both parties.

In her bill of review and suit for partition, the relator contends she was prevented from asserting her rights to community property not divided by the decree because of the respondent's fraud in securing the agreement and relator's consent to the entry of the judgment. Specifically, the relator claims that at least twelve parcels of real property and an unknown amount of personal property were not divided by the divorce decree. She alleges the respondent represented that the items listed in the divorce decree represented the full extent of the community estate. She additionally alleges that respondent concealed community property from her. In the petition for bill of review, relator asserts the entry of the divorce decree was made upon her reasonable reliance on the respondent's false statements and without any fault or negligence on her part.

The respondent filed a notice to take the oral deposition of John Lively, the relator's attorney. The notice included a request for Lively to produce "his entire casefile concerning finalization of divorce action ..." between the parties, including, but not limited to, (1) correspondence between Lively and the relator concerning her knowledge of assets acquired during the marriage; (2) notes in Lively's handwriting or information given by relator to Lively concerning the client's knowledge of the estate of the parties; (3) all investigation or research by Lively into the estate of the parties; and (4) all communications of any sort whatsoever

---

1. Neither the application for writ of mandamus nor the response discloses this information. However, both parties agreed to these facts in oral argument before our court.

between Lively and relator which indicate the relator's knowledge or Lively's understanding of the estate of the parties.

Attorney Lively filed a motion for protective order on behalf of relator seeking to quash the deposition and the notice of deposition because the items sought were protected by the attorney-client privilege. The respondent alleged that the relator knew of the properties at the time the divorce decree was entered. Additionally, the respondent alleged he had produced copies of tax returns to relator's lawyer that reflected the properties in question.

The trial court, after a hearing in which evidence was apparently heard, entered an order denying the motion for protective order and ordering Lively to submit to the deposition and answer questions regarding the knowledge of relator of the real properties in dispute.[2] The trial court further ordered Lively to produce the following:

Copies of his entire casefile concerning finalization of divorce action between KATHERINE JEAN FOLTZ PARTEN and KEITH DUANE PARTEN which occurred on or about October 6, 1983, including, but not limited to the following:

1. All correspondence between the deponent and KATHERINE JEAN FOLTZ PARTEN (client) concerning client's knowledge of assets acquired during the marriage between her and KEITH DUANE PARTEN;

2. Notes in the handwriting of deponent or information given by client to deponent concerning client's knowledge of the estate of the parties, whether separate or community;

3. All investigation or research by deponent into the estate of the parties;

4. All communications of any sort whatsoever between deponent and client which indicate client's knowledge or deponent's understanding of the community estate of the parties including real and personal property or any other asset acquired or owned or claimed by KATHERINE JEAN FOLTZ PARTEN and KEITH DUANE PARTEN on or before October 6, 1983.

██ Relator accurately claims the information requested is protected by the attorney-client privilege. TEX.R.CIV. EVID. 503(b); *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978). In *West,* the supreme court held the attorney-client privilege protects, "all matters in which the attorney's professional advice or services are sought...." This language is obviously unequivocal and protects all communications between attorney and client. The purpose of the privilege is to promote unrestrained communications between attorney and client without fear that confidential communications will be disclosed by the attorney either voluntarily or involuntarily. *West,* 563 S.W.2d at 245.

Nonetheless, Texas courts have recognized that a client may waive a protection of a privilege by allegations in legal proceedings. *Ginsberg,* 686 S.W.2d at 107; *DeWitt and Rearick, Inc. v. Ferguson,* 699 S.W.2d 692, 694 (Tex.App.—El Paso 1985, no writ). Respondent argues these precedents dictate that when relator filed a bill of review denying that she had knowledge of the properties and claiming the respondent had concealed them from her, the relator waived any attorney-client privilege as far as it related to communications between the attorney and client relating to the extent of the community estate.

In this light, we review the holding in *Ginsberg* and *DeWitt.* In *Ginsberg,* the supreme court was faced with the situation in which a widow claimed that a lawyer had

---

**2.** Originally, the hearing was held before former Presiding Judge Tod Weaver, now Chief Justice of this court. Chief Justice Weaver entered a less encompassing order ordering attorney Lively to submit to questioning regarding relator's knowledge of real properties in dispute both prior to and after the rendition of the divorce decree and ordering relator to answer similar questions regarding her discussions with attorney Lively concerning his or her knowl-edge of the real properties both before and after the rendition of the divorce decree. Chief Justice Weaver has recused himself from these proceedings. After Chief Justice Weaver was elected to this court, Judge Bill Brigham was appointed to the bench of the 233rd District Court.

Judge Brigham entered the order which is attacked by the writ of mandamus after further motions by both parties. This order was entered on September 1, 1989.

forged her deceased's husband's name on a deed and fraudulently tricked her into signing a second deed ratifying the first. In her petition to set aside the deed, she alleged she did not know the property had been transferred until immediately before filing suit, almost ten years after she signed. In pre-trial discovery, the widow was deposed and testified she did not remember signing the second deed and volunteered that during the time period she signed the deed she was under the care of a psychiatrist. She testified she received numerous shock treatments and was hospitalized for depression. When the lawyer sought the production of the psychiatric records, the widow claimed the psychiatric privilege under the statute then in force. She also produced the records for an in-camera inspection. The records revealed she had told the psychiatrist the property in question had been sold almost ten years prior to her filing suit. Thereafter, the attorney sought to compel the production of the documents. *Ginsberg*, 686 S.W.2d at 106.

The supreme court ruled that the widow's use of the privilege was an offensive, rather than defensive use. Specifically, the court held the widow had invoked the jurisdiction of the court to seek affirmative relief; yet, attempted to deny the attorney the benefit of evidence which would materially weaken or defend her claims against him by the assertion of the privilege. The supreme court ruled this offensive use was not permissible. *Id.* at 107–08.

This holding was extended to the attorney-client privilege in *DeWitt*. In *DeWitt*, three sisters entered into a real estate commission contract with a group of agents for the sale of land. At about the same time, they entered into another real estate commission contract for the sale of land with DeWitt and Rearick, Inc. The first group of real estate agents brought suit against the sisters claiming unpaid commissions. The sisters, on the advice of their attorneys, settled the suit for a substantial sum. Thereafter, they made a demand on DeWitt and Rearick, Inc., alleging violations of the Texas Real Estate License Act and the Deceptive Trade Practices Act. In subse-

quent litigation, they made a claim for recovery of commissions paid and substantial amounts of actual and punitive damages. *DeWitt*, 699 S.W.2d at 693.

During discovery, the three sisters testified the case against the first group of real estate agents was settled on advice of counsel. However, they declined to discuss or to reveal what advice their attorneys had given them claiming the protection of the attorney-client privilege. The El Paso Court of Appeals applied the reasoning of *Ginsberg* in holding that the sisters were attempting to use the attorney-client privilege offensively rather than defensively. *DeWitt*, 699 S.W.2d at 694.

In applying these precedents to the case before us, we hold the relator's attempt to assert the privilege is an offensive use of the privilege which is prohibited by *Ginsberg*. In this case, relator alleged in her bill of review that the original decree was entered without her fault or negligence and because respondent misrepresented the extent of the community property and concealed community property from her. The respondent alleged that the relator knew of the properties and he produced documents for the relator's attorney reflecting the properties. As a result, her knowledge and the knowledge of her agent and lawyer, attorney Lively, are crucial to the proceedings. As in *DeWitt*, the relator may be forced to elect to claim the attorney-client privilege or abandon her bill of review. *DeWitt*, 699 S.W.2d at 693.

We must note that the filing of a lawsuit rarely affects the claim of the attorney-client privilege. However, this case presents a unique fact situation. In order to prevail in her bill of review, the relator is required to prove that the judgment in the underlying case was entered without any fault or negligence on her part. In other words, she must prove she did not have knowledge of the property at the time the decree was entered. The respondent sufficiently alleged that the relator did have knowledge through her agent and attorney, because tax returns reflecting the property were delivered to the attorney.

Nothing in this opinion should be considered as a comment on the admissibility of evidence discovered from attorney Lively.

Nonetheless, we are forced to conditionally grant the writ of mandamus because of the overbreadth of the judge's order. Specifically, the order mandates that attorney Lively produce "copies of his entire casefile concerning the finalization of the divorce action...." This information may include documents and notes not related to the issue of the relator's or her lawyer's knowledge of the extent of the community estate. This information is clearly protected by the attorney-client privilege and work product doctrine and is not discoverable under the claims made by the relator in this case.

As a result, we conditionally grant the writ of mandamus directed to that part of the court's order that allows discovery into matters not dealing with the relator's and her lawyer's knowledge of the community estate both before and after the entry of the divorce decree. We believe that Judge Brigham will enter such an order limiting discovery; but if he does not, we direct the clerk of our court to issue the writ of mandamus.