**REPUBLIC INSURANCE COMPANY, Relator,**

v.

**The Honorable Paul R. DAVIS, Jr., Judge, Respondent.**

**No. D–2369.**

Supreme Court of Texas.

June 3, 1993.

Rehearing Overruled June 30, 1993.

Jerry V. Walker, Houston, Terry O. Tottenham, Dean A. Schaffer, Austin, W. Wendell Hall, San Antonio, for relator.

Patrick McCaffrey, Jr., Mark Wham, Houston, Gary F. DeShazo, Austin, W. Richard Ellis, III, Houston, Stephen L. Hubbard, Dallas, Margaret F. Uhlig, Jan Soifer, Gregory C. Douglass, Austin, David D. Williams, Houston, Joe K. Longley, Austin, for respondent.

## OPINION

ENOCH, Justice.

This mandamus action calls for the resolution of two issues. First, does the "offensive use" waiver, enunciated by this court in *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985), apply to the attorney-client privilege? Second, does the privilege for party communications extend to subsequent litigation? We conclude that the *Ginsberg* "offensive use" waiver, while potentially applicable to the attorney-client privilege, does not apply in this case. We also conclude that the party communication privilege does not extend to any lawsuit which does not involve claims that precipitated the communication. Because the trial court abused its discretion in

ordering the production of documents protected by the attorney-client privilege, we conditionally grant the writ of mandamus.[1]

## I.

Republic Insurance Company ("Republic") reinsured certain policies issued by National County Mutual Fire Insurance Company ("National County"). One of those policies was issued to Culver Concrete ("Culver"). That policy provided $500,000 of primary coverage, with the first $50,000 being reinsured by Republic.

A Culver employee, Reginald Davis, was involved in an accident in 1985. The truck driven by Reginald Davis struck and killed Ezequiel Trevino. Trevino's representatives and survivors filed two suits, which were eventually consolidated, against Culver and Reginald Davis. Prior to the conclusion of the Trevino suit, National County was placed into receivership.

In 1988, National County was declared insolvent and placed into liquidation and receivership. As a part of National County's liquidation, a temporary and permanent injunction was issued prohibiting anyone with assets of National County from disposing of those assets. The reinsurance contract is an asset of National County, and Republic was enjoined from disposing of the proceeds of the contract to anyone except the receiver of National County.

The Trevino lawsuit against Culver and Reginald Davis ultimately resulted in a $19,000,000 judgment being entered against Culver and Reginald Davis. After the judgment was entered, the Trevino plaintiffs, Culver, Reginald Davis, and Canal Insurance Company all made demands on Republic for the reinsurance proceeds.

Republic filed a declaratory judgment action in Travis County. Republic acknowledged that it owed the reinsurance proceeds; however, it was faced with competing demands as it was enjoined from paying them to anyone but the Receiver. Republic offered to pay the reinsurance proceeds into the registry of the court pending resolution of the dispute. Republic sought a declaration that (1) it did not have an obligation to pay the reinsurance proceeds to the Trevino plaintiffs, Culver, Canal, and/or Reginald Davis; (2) its sole obligation was to the Receiver of National County; and (3) it did not owe any duty to the Trevino plaintiffs, Culver, Canal, and/or Reginald Davis in conjunction with or separate from the reinsurance contract. Republic also sought an injunction against the Trevino plaintiffs, Culver, Canal, and Reginald Davis preventing them from making any claim to the reinsurance proceeds.

The Trevino plaintiffs, Culver, and Reginald Davis filed counterclaims against Republic. The counterclaims allege claims under the Deceptive Trade Practices Act, the Insurance Code, and common law. The Trevino plaintiffs, Culver, and Reginald Davis contend that Republic is liable for the $19,000,000 judgment.

The counterclaims allege that, in fact, Republic took over the direct administration and settlement of certain National County policies, including the policy issued to Culver, and therefore, Republic became the primary insurer on the policy covering Culver. The Trevinos also allege that, despite knowing that the value of the claims asserted by the Trevinos against Culver and Reginald Davis exceeded the limits on Culver's policy, and despite having an opportunity to settle those claims within policy limits, Republic wrongfully refused to settle the case.[2]

---

**1.** The original respondents in this mandamus action were Judge Joe Dibrell and Judge Peter M. Lowry. Judge Dibrell initially ordered the production of the documents which are the subject of this dispute. The case, however, was docketed in Judge Lowry's court. The case was eventually transferred to the 200th District Court, Judge Paul R. Davis presiding. On September 3, 1992, Judge Davis signed an order requiring Republic Insurance to produce all documents subject to Judge Dibrell's orders. By signing this order, Judge Davis has, in effect, adopted the orders signed by Judge Dibrell. Judge Davis has been substituted as the respondent.

**2.** All causes of action that Culver or Reginald Davis could assert against Republic have been assigned to the Trevinos by order of the trial court.

After the initiation of the counterclaims, the Trevino plaintiffs served Republic with a request for production of documents. Republic asserted objections to the request.

The discovery objections were heard before Judge Joe Dibrell who referred the dispute to a special master. The special master heard evidence and issued a report to the trial court on March 9, 1992. The special master recommended that some documents be produced despite the fact that Republic established that the documents were protected by the attorney-client privilege. The special master's report concluded that although Republic met its burden to establish the attorney-client privilege, the privilege had been waived under *Ginsberg*. The special master also recommended that certain documents, for which Republic asserted the party communication privilege, be produced. The special master determined that the party communication privilege was inapplicable because the communication had occurred in connection with another lawsuit.

The special master issued his report on March 9, 1992. With no advance notice of its existence, counsel for Republic received the report on March 11, 1992. The same day, March 11, 1992, Judge Dibrell signed an order that tracked the special master's recommendations.

## II.

■ We must first determine whether Republic preserved its complaints for our review. Republic did not object to the special master's report before the trial court adopted the report. The real parties in interest contend that Republic has waived any objection it had to the special master's report because it failed to object to the report prior to its adoption by the trial court.[3]

The record reflects that the trial court adopted the special master's report before Republic received its copy of the report.

Republic did not have the opportunity to object. Consequently, without reaching the question of whether an objection is required, we conclude that Republic has not waived error in this context.

## III.

The attorney-client privilege as embodied in TEX.R.CIV.EVID. 503(b) secures the free flow of information between attorney and client, and it assures that the communication will not later be disclosed. *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978). Although the aim of the modern discovery process is to yield full and complete information regarding the issues in dispute, courts also recognize the importance of the attorney-client privilege. Confidential communications promote effective legal services. This in turn promotes the broader societal interest of the effective administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Confidential communications, however, often result in the suppression of otherwise relevant evidence. Courts balance this conflict between the desire for openness and the need for confidentiality in attorney-client relations by restricting the scope of the attorney-client privilege. *See Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 634 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *In re LTV Securities Litigation*, 89 F.R.D. 595, 600 (N.D.Tex. 1981) (stating that the attorney-client privilege is to be construed no more broadly than necessary to effectuate its purpose). This case calls for us to determine whether a party's need for information can ever outweigh the benefits associated with the attorney-client privilege.

## A.

The real parties in interest seek information that is protected by the attorney-client

---

**3.** Some decisions by courts of appeals suggest that a party must object to the special master's report before the trial court adopts it. *See Martin v. Martin*, 797 S.W.2d 347, 350 (Tex.App.— Texarkana 1990, no writ); *McCrory & Co., Inc. v. Avery Mays Constr. Co.*, 690 S.W.2d 333, 334 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Novotny v. Novotny*, 665 S.W.2d 171, 173 (Tex.App.— Houston [1st Dist.] 1984, writ dism'd). Because we do not reach this issue, we do not pass on the question of whether an objection is required.

privilege. They contend that our decision in *Ginsberg* establishes a waiver by "offensive use" of the attorney-client privilege.[4] We must determine whether there is a waiver by offensive use of the attorney-client privilege, and if there is, whether Relator waived its attorney-client privilege.

*Ginsberg* involved a trespass to try title suit. Ginsberg claimed that he owned a building by virtue of two deeds. One deed was from a Mr. Gaynier to Ginsberg conveying his interest in the building. After Mr. Gaynier died, Ginsberg had Mrs. Gaynier execute a deed ratifying the deed her husband signed. *Ginsberg*, 686 S.W.2d at 106.

Almost ten years later Mrs. Gaynier brought the trespass to try title action, claiming the first deed was forged and that she was fraudulently induced to sign the second deed. *Id.* At deposition she testified that she could not remember signing the second deed and that she was unaware until 1981 that the ownership of the building had changed. She also revealed that she had seen a psychiatrist in 1972 and subsequent years. Ginsberg sought access to the medical records. The records contained information which virtually established Ginsberg's statute of limitations defense. The records revealed that Mrs. Gaynier told her psychiatrist in 1972 that the "building was sold while we were in Padre Island." *Id.*

Mrs. Gaynier resisted disclosure of the records on the basis of the psychotherapist-patient privilege. This Court rejected her claim of privilege.[5] In doing so, this court relied on the notion that "[a] plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Id.* at 108 (quoting *Pavlinko v.*

*Yale–New Haven Hosp.*, 192 Conn. 138, 470 A.2d 246, 251 (1984)). The facts in *Ginsberg* mandated that Mrs. Gaynier either waive her psychotherapist privilege and pursue her claim for affirmative relief, or maintain her privilege and abandon her cause of action. *Id.* at 107–08.

### B.

Five courts of appeals have considered the issue of waiver by offensive use in the attorney-client context. Of those five, four hold that the offensive waiver applied to the attorney-client privilege; the fifth held that the offensive waiver was limited to the facts of *Ginsberg* and was not applicable to the attorney-client privilege.

The first case to apply the *Ginsberg* offensive use waiver to the attorney-client privilege was *DeWitt and Rearick, Inc. v. Ferguson*, 699 S.W.2d 692 (Tex.App.—El Paso 1985, orig. proceeding). In *DeWitt*, three sisters offered land they owned for sale. Two of the sisters signed a sales contract with Messrs. Passero and Wieland. *Id.* at 692. The third sister never signed. Another group of buyers, representing DeWitt and Rearick, Inc., approached the sisters and obtained all three sisters' signatures on a contract. *Id.* The first buyers sued for specific performance. The sisters settled that suit for $350,000. *Id.* at 693.

The sisters sued DeWitt and Rearick, Inc. and two of its employees for $400,000 in actual damages. DeWitt and Rearick, Inc. attempted to determine the basis upon which the sisters had settled their suit. *Id.* The sisters testified that they settled upon the advice of counsel; however, they refused to divulge the basis and theories upon which the settlement was made, asserting the attorney-client privilege. *Id.* DeWitt and Rearick, Inc. responded to the sisters' claims of privilege by arguing that

---

4. This issued confronted the court in *West*, 563 S.W.2d at 244, but the issue was not reached as the relevant communications were not brought before the trial court.

5. The psychotherapist-patient privilege contains specific exceptions, none of which were applicable to the *Ginsberg* scenario. *See* Tex.R.Civ.Evid. 510(d)(1)–(7). The *Ginsberg* decision relies for

its support on Fifth Amendment cases. *See Ginsberg*, 686 S.W.2d at 107. The cases cited stand for the proposition that a plaintiff may not come into court and use his Fifth Amendment privilege as an offensive weapon. *See, e.g., Henson v. Citizens Bank of Irving*, 549 S.W.2d 446, 448 (Tex.Civ.App.—Eastland 1977, no writ).

the privilege had been waived. It contended that the sisters could not sue for the money paid out in settlement, while blocking DeWitt's inquiries about the basis for the settlement. *Id.*

The court of appeals concluded that the offensive use waiver applied. *Id.* at 694. The reasons behind the sisters' settlement, which were protected by the attorney-client privilege, materially affected DeWitt and Rearick's ability to mount a defense. The court held that the sisters were not entitled to pursue their claim and maintain the attorney-client privilege. *Id.*

The court in *Parten v. Brigham*, 785 S.W.2d 165, 168 (Tex.App.—Fort Worth 1989, orig. proceeding), also applied *Ginsberg* to the attorney-client privilege. In *Parten*, the relator filed a bill of review contending that her ex-husband had misrepresented the extent of the community estate during their divorce by concealing property from her. *Id.* at 166. The ex-husband contended that either the wife knew of the property or that her attorney was aware of it. *Id.* The ex-husband noticed the deposition of the attorney who represented the wife during the divorce action to question him about his knowledge of the community estate and the wife's knowledge of the community estate. The wife responded that those matters were protected by the attorney-client privilege. *Id.* at 167.

The court of appeals concluded that by filing the bill of review, which required the wife to prove that the judgment in the divorce action was entered without any negligence on her part, the wife waived her attorney-client privilege. *Id.* at 168. The court of appeals noted that this presented an offensive use of the attorney-client privilege. By filing the bill of review, the wife placed her knowledge and the knowledge of her agent—her attorney—directly in issue. *Id.*

The court in *Public Util. Comm'n v. Houston Lighting & Power Co.*, 778 S.W.2d 195 (Tex.App.—Austin 1989, no writ), agreed that offensive use of the attorney-client privilege resulted in the waiver of the privilege. *Id.* at 198. The court, however, concluded that the attorney-client privilege had not been waived through offensive use. *Id.* at 199. In this case there was no relationship between the privileged communications sought, legal advice concerning settlement of a prior lawsuit, and the right of the privilege holder to maintain its action. *Id.* Because the communications failed to meet this requirement, there was no basis for invading the attorney-client relationship. *Id.*[6]

The only court of appeals to consider the issue and reject the offensive use waiver is *Cantrell v. Johnson*, 785 S.W.2d 185, 190 (Tex.App.—Waco 1990, orig. proceeding). *Cantrell* involved a dispute concerning a stock option agreement contingent upon Cantrell, the holder of the option, remaining an employee of the company until a certain date. Cantrell was fired before the option date. Cantrell alleged that his termination was in violation of his employment agreement. *Id.* at 186. Cantrell sued his employer for various causes of action. The employer sought to discover certain documents prepared for Cantrell by an attorney. The documents all dealt with the negotiations of the stock option and the employment contract. *Id.* at 187. The trial court found that the attorney-client privilege was waived for certain documents under the *Ginsberg* rationale. *Id.* at 188.

The court of appeals disagreed. First, the court of appeals noted that this case was not one in which proof of a defense might be precluded if the discovery was not permitted. *Id.* Although the documents might reveal Cantrell's knowledge and state of mind, relevant factors in the litigation, those factors can be litigated without undermining the attorney-client privilege. *Id.* The court went on to determine that the *Ginsberg* holding must be limited to the

---

6. Most recently, the court of appeals in *Westheimer v. Tennant*, 831 S.W.2d 880 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding), concluded that the *Ginsberg* offensive use waiver applied to the attorney-client privilege. *Id.* at 884. The plaintiffs have now sought mandamus relief in this court. Today, we overrule the plaintiffs' motion for leave to file writ of mandamus. *Al–Bassam v. Fourteenth Court of Appeals*, D–2694 (June 3, 1993).

psychotherapist-patient privilege. *Id.* at 190.

■ We conclude the better position applies the *Ginsberg* offensive use waiver to the attorney-client privilege.[7] The common law and now our rules of evidence acknowledge the benefit provided by the attorney-client privilege. In an instance in which the privilege is being used as a sword rather than a shield, the privilege may be waived. Privileges, however, represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found.[8] For that reason, the following factors should guide the trial court in determining whether a waiver has occurred.

■ First, before a waiver may be found the party asserting the privilege must seek affirmative relief.[9] Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought. Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence.[10] If any one of these requirements is lacking, the trial court must uphold the privilege.[11]

7. In *Owens–Corning Fiberglas v. Caldwell*, 818 S.W.2d 749 (Tex.1991), this court indicated, albeit indirectly, that the *Ginsberg* offensive use waiver applied to privileges other than the psychotherapist-patient privilege. One privilege at issue in *Owens–Corning* was the work product privilege. *Id.* at 750. The trial court had ruled that any work product privilege had been waived through offensive use because the defendant raised the "state of the art" mitigation of product liability. *Id.* This court quoted *Ginsberg* in noting that a party may not seek affirmative relief while concealing facts by asserting a privilege. *Id.* at 752. We ultimately concluded, however, that because the state of the art mitigation was not a "true defense or bar to recovery," *Ginsberg* was inapplicable to the case. *Id.*

Other jurisdictions find offensive use waivers of the attorney-client privilege. *E.g., Chicago Title Ins. Co. v. Superior Court*, 174 Cal.App.3d 1142, 220 Cal.Rptr. 507, 512 (1985) (implied waiver where communication "goes to the heart of the claim"); *Mountain States Tel. & Tel. v. DiFede*, 780 P.2d 533, 543 (Colo.1989) (when party places in issue confidential communication going to heart of claim, an implied waiver results); *League v. Vance*, 221 Neb. 34, 374 N.W.2d 849, 856 (1985) (party impliedly waives privilege by raising issue central to his ability to maintain action); *United Jersey Bank v. Wolosoff*, 196 N.J.Super. 553, 483 A.2d 821, 828 (1984) (fairness may require privilege to be pierced); *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 468 N.Y.S.2d 895, 897 (1983) (implied waiver if necessary to determine validity of claim and application would deprive adversary of vital information); *see* note 12, *infra.*

8. One of the principles behind privileges is that the harm to the relationship protected by the privilege is greater than the benefit gained through complete disclosure. 8 J. Wigmore, *Wigmore on Evidence* § 2285 at 527 (McNaughton rev. 1961).

9. *Cf. Maryland Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 457–58 (Tex.1982) (refusing to find defendant waived investigative privilege even though privileged communication formed "operative facts" of plaintiff's causes of action).

10. If the communication is but one form of indirect evidence of a matter, the trial court should not find a waiver. *See Hearn v. Rhay*, 68 F.R.D. 574, 582 (E.D.Wash.1975). If the communication goes beyond issues dealing with the affirmative relief sought, the trial court should redact any part of the privileged communication that does not relate to the affirmative relief sought.

11. The court in *Hearn* set forth offensive use factors similar, though somewhat less rigorous, than those we adopt. *Hearn* involved defendants attempting to assert the affirmative defense of good faith in a 42 U.S.C. § 1983 claim. The plaintiff sought to depose the defendants' attorneys and sought production of documents. All of this information was both protected by the attorney-client privilege and highly relevant to the defendants' affirmative defense. *Id.* at 580–81. The court concluded that the defendants had impliedly waived the attorney-client privilege by asserting their affirmative defense. The *Hearn* court found three factors common to cases finding a waiver of the attorney-client privilege by offensive use:

(1) the assertion of the privilege was the result of an affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 581. The court went on to conclude that the harm to the adversary was sufficient to justify the piercing of the privilege. *Id.* at 582.

### C.

We next examine the facts of this case to determine whether the offensive use waiver guidelines were met. We conclude that in this case there has been no waiver of the attorney-client privilege.

■ Republic is not seeking affirmative relief. Republic did file a declaratory judgment action, but a declaratory judgment action is not necessarily an action for affirmative relief.[12] The Civil Practice and Remedies Code provides that the Texas Declaratory Judgments Act is "remedial" only. Tex.Civ.Prac. & Rem.Code § 37.-002(b). That act serves only "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* "The purpose of the [declaratory judgment statute], as evidenced by its own terms, is to declare existing rights, status, or other legal relations." *Emmco Ins. Co. v. Burrows*, 419 S.W.2d 665, 670 (Tex.Civ.App.—Tyler 1967, no writ) (emphasis omitted). The statute cannot be invoked as an affirmative ground of recovery to revise or alter such rights or legal relations. *Id.*

Republic seeks a declaration of its obligations with respect to the reinsurance proceeds. It also requests a declaration that it owed no duties to the Trevino plaintiffs, Culver, Canal, or Reginald Davis. Finally, it seeks an injunction that would prohibit the same parties from filing a lawsuit to recover the reinsurance proceeds. The unifying factor to the relief Republic seeks is that all of it is, in reality, defensive in nature. We reject the contentions of the real parties in interest that Republic's declaratory judgment is seeking the type of affirmative relief that would result in an offensive use waiver. Because we reach the conclusion that Republic is not seeking

affirmative relief, we need not consider the other offensive use factors.

The trial court abused its discretion in ordering Republic to produce documents protected by the attorney-client privilege. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

### IV.

Republic also argues that the trial court abused its discretion by ordering the production of documents protected by the party communication privilege. Republic concedes that the party communications at issue were not generated in contemplation of or in the course of this suit. They were generated in what Republic refers to as "pending, parallel" litigation involving the same nucleus of facts and some of the same parties. Republic urges that these party communications should be privileged in this suit.

The party communication privilege is found in rule 166b(3)(d). That rule reads in part:

> Communications between agents or representatives or the employees of a party to the action or communications between a party and that party's agents, representatives or employees, when made subsequent to the occurrence or transaction upon which the suit is based and *in connection with the prosecution, investigation or defense of the particular suit, or in anticipation of the prosecution or the defense of the claims made a part of the pending litigation* [are exempt from discovery].

Tex.R.Civ.P. 166b(3)(d) (emphasis added).

■ The language of this rule requires that the party communication, to be privileged, occur during or in anticipation of the

---

Other jurisdictions have followed *Hearn's* reasoning. *See, e.g., Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir.1987); *GAB Business Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 n. 11 (11th Cir.1987); *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wis. Steel*, 666 F.Supp. 1148, 1150–51 (N.D.Ill. 1987); *Federal Deposit Ins. Corp. v. United States*, 527 F.Supp. 942, 950–51 (S.D.W.Va.1981);

*Russell v. Curtin Matheson Scientific, Inc.*, 493 F.Supp. 456, 458 (S.D.Tex.1980).

12. We do not hold, as the concurring and dissenting opinion implies, that an action under the Declaratory Judgment Act may never constitute affirmative relief. There may be occasions when a party couches affirmative relief in the form of a declaratory judgment action. In such a case, the offensive use waiver may apply. This is not such an occasion.

particular suit in which the privilege is asserted. Our holdings have been consistent with the language of the rule. *See Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex.1986); *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex.1986). While we recognize that a repeat litigant must be able to fashion a defense to each suit, we cannot ignore the express language of the rule. Party communications not generated in connection with or in anticipation of the particular suit or in anticipation of the claims made a part of the pending litigation in which the privilege is asserted are not privileged.

\*   \*   \*   \*   \*   \*

We are confident that the trial court will vacate the order dated September 3, 1992 and that it will proceed in accordance with this opinion. A writ of mandamus will issue only if it does not.

Concurring and dissenting opinion by GAMMAGE, J., joined by DOGGETT, J.

GAMMAGE, Justice, concurring and dissenting.

I agree with parts I and II of the majority opinion. Republic must be given an opportunity to object to the special master's report before Republic can be held to have waived objection to it. I agree with part III–A and most of part III–B of the majority opinion. This court's *Ginsberg* opinion sets forth an "offensive use" exception to certain privileges, and the logical conclusion from our own opinions—as well as the better-reasoned opinions of our courts of appeals—is that the attorney-client privilege is subject to the *Ginsberg* doctrine. I also agree with part IV of the majority opinion. The party communications privilege is limited to the particular suit or suits in anticipation of which the communications are made.

I disagree with the last paragraph of Part III–B where the majority states, for the first time, three "factors" which are more "rigorous" than the corresponding elements for offensive-use waiver in federal courts. The statement in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975), is adequate:

> (1) the assertion of the privilege was the result of an affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*See, e.g., Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir.1987); *GAB Business Servs. Inc. v. Syndicate 627*, 809 F.2d 755, 762 n. 11 (11th Cir.1987). This court should not adopt an even more restrictive standard for determining when *Ginsberg* offensive use has occurred.

I strongly disagree with the majority's perspective of the Declaratory Judgment Act counterclaim as not "seeking affirmative relief." That the statute states it is "remedial" means nothing, since a number of statutes which are "remedial" have been held to authorize affirmative relief.[1] The only authority the majority cites is a no-writ case, *Emmco Ins. Co. v. Burrows*, 419 S.W.2d 665, 670 (Tex.Civ.App.—Tyler 1967, no writ), which refers to declaring "existing rights, status, or other legal relations." That hardly describes the Declaratory Judgment Act.

The Declaratory Judgment Act requires an *actual controversy* which will be *resolved* between the two parties before it can apply. *United Servs. Life Ins. Co. v.*

1. *See, e.g., Nuclear Corp. of Am. v. Hale*, 355 F.Supp. 193, 197 (N.D.Tex.), *aff'd*, 479 F.2d 1045 (5th Cir.1973) (former article 5472e, contractor's trust fund statute, now codified at Tex.Prop. Code Ann. §§ 162.001–.033, remedial but creates cause of action); *Witty v. American Gen. Cap. Distrib., Inc.*, 727 S.W.2d 503, 504 (Tex.1987) (wrongful death statute "is remedial in nature"); *Board of Ins. Com'rs v. Great S. Life Ins. Co.*, 150

Tex. 258, 239 S.W.2d 803 (1951) (insurance regulatory statutes); *Castaneda v. Texas Dep't of Agric.*, 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992, writ denied) (Whistle Blower's Act, Tex.Civ.Stat.Ann. art. 6252–16a, has a remedial purpose); *National Farmers Union Property and Cas. Co. v. Degollado*, 844 S.W.2d 892, 896 (Tex. App.—Austin 1992, writ denied) (Texas Workers' Compensation Act remedial).

*Delaney,* 396 S.W.2d 855, 860 (Tex.1965); *Board of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 114–15, 283 S.W.2d 722, 724–25 (1955); *Cobb v. Harrington,* 144 Tex. 360, 369–70, 190 S.W.2d 709, 713–14 (1945). It authorizes, at the trial court's discretion, attorney's fees to the prevailing party. TEX.CIV.PRAC. & REM.CODE § 37.009. In fact, Republic originally sought attorney's fees in its counterclaim, though it later withdrew that request. The court's judgment in a declaratory judgment action may include a mandatory or prohibitory injunction. *Davis v. Pletcher,* 727 S.W.2d 29, 35 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.); TEX.CIV.PRAC. & REM.CODE § 37.011. It may subject the losing party to contempt or subsequent injunctive order. *Valley Oil Co. v. City of Garland,* 499 S.W.2d 333, 335–36 (Tex.Civ.App.—Dallas 1973, no writ).[2] There is no reason why *Ginsberg* should not apply to a party seeking declaratory judgment relief, just as it does to suits for other types of relief. The consequences can be every bit as devastating to the litigant under a declaratory judgment action.[3]

In *Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985), although admittedly in a venue context, this court condemned the use of a declaratory judgment action as a "preemptive strike" on a plaintiff's claim. In this cause Republic sought to make just such a preemptive strike to defeat plaintiffs' grounds for liability through a party-standing issue raised as a declaratory judgment action. This attempt to cut off liability by a procedural declaration is every bit as much an "offensive use" under *Ginsberg* as a suit to recover a money judgment. Put another way, a suit to declare one does not owe a contested debt because of some "affirmative defense" to that debt is every bit as much an "offensive use" in the *Ginsberg* sense—even though it is brought as a

declaratory judgment action—as the suit to collect the contested debt itself would be.

Disagreeing with the conclusion there is no "offensive use," I also disagree that the few documents the majority would protect should be protected. The special master and several district judges who have reviewed this matter properly concluded that the *Ginsberg* offensive use waived the attorney client privilege as to these documents. Accordingly, I would deny the petition for writ of mandamus in its entirety.

DOGGETT, J., joins in this concurring and dissenting opinion.

---

2. The actual holding was that a subsequent injunction was appropriate. The opinion by Justice Guittard sets forth decisions from other jurisdictions having enacted the Uniform Declaratory Judgments Act to demonstrate the contempt enforcement sanction.

3. Contrary to what the majority claims, I do not imply and do not intend to imply that the ma-

jority concludes a declaratory judgment action is never an "offensive use" within the meaning of *Ginsberg.* 856 S.W.2d at 164 n. 12. I merely point out that in many instances a declaratory judgment action amounts to an "offensive use." In my view, Republic's suit in this cause qualifies as one such instance.