**H. Lee LEWIS, Jr., and Griggs & Harrison, Relators,**

**v.**

**The Honorable Don E. WITTIG, Judge of the 125th Judicial District Court of Harris County, Respondent.**

**No. B14–94–00158–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 28, 1994.

Thomas P. Sartwelle, Gay C. Brinson, Jr., Marjorie C. Bell, Houston, for appellant.

Julius Glickman, Fritz Barnett, Houston, for appellee.

Before SEARS and LEE, JJ., and JUNELL, J., retired, sitting by designation.

## OPINION

JUNELL, Justice (Retired).

This original mandamus proceeding arises out of a suit for legal malpractice. Relators, H. Lee Lewis, Jr., and Griggs & Harrison (collectively "the Lawyers"), request a writ to order Respondent, Judge Don E. Wittig, to set aside a discovery protection order he issued in favor of the Real Parties in Interest, Mt. Hawley Insurance Company ("Mt. Hawley") and RLI Insurance Company ("RLI") (collectively "the Companies"). We conditionally grant the writ.

Mt. Hawley and RLI are closely affiliated insurance companies. In two separate lawsuits, each company was sued by a client for failure to defend and indemnify. The Lawyers represented Mt. Hawley and RLI in each suit. The Companies lost both suits, incurring liability for damages far in excess of the clients' policy limits. Now, Mt. Hawley and RLI are suing the Lawyers for legal malpractice.

The Lawyers defend on grounds that the Companies were sophisticated in coverage and bad faith matters and agreed with each of the Lawyers' decisions in the underlying suits. In addition to the Lawyers, Byron Lee of the law firm of Coats, Rose, Yale, Holm, Ryman & Lee ("Coats") represented the Companies in both suits. Jim Peden of the law firm of Strasburger & Price ("Strasburger") represented Mt. Hawley in an unsuccessful appeal of the judgment against Mt. Hawley. The Companies have designated Byron Lee and Jim Peden as experts in their legal malpractice suit against the Lawyers.

The Lawyers assert that the Companies, their experts, and the co-participating law firms have evidence the Lawyers need to defend themselves. That proof can be found, the Lawyers contend, in the Companies' claims files related to the underlying suits and in Coats' and Strasburger's litigation files. The proof may come in the form of memoranda or correspondence discussing the complexities of the suits and acknowledging the propriety of the Lawyers' decisions.

To obtain that evidence, the Lawyers served notices of depositions along with requests for production on Mt. Hawley, RLI, Coats, and Strasburger. The Lawyers requested documents related to the underlying suits, including but not limited to the entire insurance claims files relevant to those matters and the corresponding litigation files of Coats and Strasburger. The Companies, on behalf of themselves and the law firms, objected and sought protection based, *inter alia*, on attorney-client, work-product, witness statement, and party-communications privileges. The Lawyers responded by moving to compel production.

The trial court held a hearing on the Companies' motion for protection and the Lawyers' motion to compel. The Companies tendered to the court from their claims files a set of indexed documents for which they sought protection. The trial court appointed a special master to inspect the claims files *in camera* and assess the Companies' right to privilege. Some 600 documents were involved. The master was also to inspect some eighteen boxes of Coats' and Strasburger's litigation files which were assembled for inspection at the offices of the Companies' attorneys.

It is unclear from the record whether the master inspected the documents that the Companies extracted from their claims files and provided to the trial court. However, regarding the law firms' litigation files, the special master was dissatisfied with the manner in which the files were segregated. He requested that the litigation files be appropriately segregated to identify the allegedly privileged documents. Via a teleconference with Judge Sharolyn Wood, sitting in for Judge Wittig, the Companies received advice that the files could be segregated with self-adhesive post-it notes without destroying the integrity of the files. The Companies maintain that this was accomplished. Nevertheless, the special master remained unsatisfied with the manner of segregation. In his report to the trial court, the master recommended that the Companies' motion for protection be denied because they had not adequately segregated the allegedly privileged materials. *See* TEX.R.CIV.P. 166b(4). Additionally, he reported that any claim of privilege by the Companies was waived by their offensive use of the privilege in instituting the legal malpractice claim.

The Companies moved for reconsideration of the master's report, and the trial court held a hearing. After the hearing, but before the trial court issued his order, the Companies tendered to the court one box and one notebook from the law firms' files for which the Companies sought protection. It is unclear from the record whether this one box and notebook were all that the Companies sought to be protected out of the original eighteen boxes of the law firms' litigation

files. In the end, the trial court decided to disregard the recommendation of the special master. Instead, the trial court issued an order granting the Companies' protection order and denying the Lawyers' motion to compel. The Lawyers sought mandamus relief. Since the date set for the trial of the Companies' malpractice suit against the Lawyers was fast approaching, we ordered that the proceedings be stayed pending resolution of this mandamus action.

 Mandamus may issue only to correct a clear abuse of discretion by the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.*, quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *TransAmerican Natural Gas Corp. v. Flores*, 870 S.W.2d 10, 12 (Tex.1994) (orig. proceeding). The scope of discovery largely rests within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985) (orig. proceeding). However, the denial of proper discovery constitutes a "clear abuse of discretion." *Id.*, quoting *Jampole v. Touchy*, 673 S.W.2d 569, 572 (Tex.1984) (orig. proceeding).

The parties in this mandamus proceeding raise questions concerning the adequacy of segregation of privileged documents and the application of the offensive-use doctrine. However, we need not reach these issues in deciding that the trial court's protective order should be vacated. Rather, we base our decision on the trial court's misinterpretation of *National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458 (Tex.1993) (orig. proceeding), as barring, as a matter of law, *any* discovery request for an "entire file."

### Requests for Production and Subpoena Duces Tecum

The Lawyers gave notice of oral depositions to both Mt. Hawley and RLI. The notices were accompanied by requests for the production of various discovery materials in-

cluding "[t]he **entire claim file** for The Lightening Laydown Matter (Ragland)" and "[t]he **entire claim file** for The Rolinda Enterprises Matter." (Emphasis added.) These were the claims files of the clients who eventually successfully sued the Companies, ultimately precipitating the present legal malpractice action.

The Lawyers also gave notice of deposition by written questions to the Coats law firm. The notice included a *subpoena duces tecum* for the following discovery materials:

> 1. Any and all documents including but not limited to the **entire file** of Coats ... in connection with their representation of RLI ... in the case of RLI Insurance Company vs. Rolinda Enterprises, Inc., ... said documents to include but not limited to all correspondence to or from RLI ..., all pleadings, memorandums and notes.
> 2. Any and all documents including but not limited to all correspondence to or from Mt. Hawley ..., all pleadings, memorandums and notes in the matter of Mt. Hawley Insurance Company vs. Howard Ragland d/b/a Lightening Laydown.

(Emphasis added.)

Finally, the Lawyers gave notice of deposition by written questions to the Strasburger law firm. The notice included a *subpoena duces tecum* for the following discovery materials:

> Any and all documents including but not limited to the **entire file** of Strasburger ... concerning their representation of Mt. Hawley ... in the matter of Mt. Hawley Insurance Company vs. Howard Ragland d/b/a Lightening Laydown, ... including but not limited to all correspondence to or from Mt. Hawley ..., all pleadings, memorandums and notes.

(Emphasis added.)

The Companies objected to the requests for production of their entire claims files and to the *subpoena duces tecum* for the entire litigation files of Coats and Strasburger on grounds that the requests were vague, ambiguous, overly broad, and unduly burdensome. The Companies also invoked the attorney-client, attorney work-product, party-communication, and witness-statement privileges.

## The Final Hearing and Order

At the trial court's hearing on the Companies' objections to the special master's report, the following dialogue occurred:

THE COURT: The Supreme Court [in *Valdez* ] ... said that when you have a privilege, offensive privilege thing like this, you have to make a detailed request, specific detailed request.

Okay. That wasn't done in this case. You had a generic request for the file. *National Union Fire v. Valdez.*

Do you understand that?

THE LAWYERS' COUNSEL: Yes, sir.

THE COURT: **So on that basis, of that case and without reaching the merits, I'm going to deny [the Lawyers'] motion.**

**I'm going to tell you that my inclination is that most of the documents if properly requested though privileged are offensive use of the privilege, and maybe you can work that out. That's where I'm going to end up, but I can't get there in view of this *National Union Fire* case and the type of request that was made.**

THE COMPANIES' COUNSEL: Okay. That's with regard to the files of Strasburger, Price and Byron Lee at Coats, Rose?

THE COURT: Yes.

THE COMPANIES' COUNSEL: Judge, there's another element to this request, and although I appreciate you're denying on this basis, it's going to come up again. It's a different basis altogether.

The original hearing we had on this is they asked for the generic "claim file." It consisted of many, many, boxes. We pulled out of that claim file all of what we claimed to be privileged material.

THE COURT: Right.

THE COMPANIES' COUNSEL: **This is not the [law firms'] files; this is the clients' claims files.** That started this original thing, and we submitted that *in camera.*

THE COURT: Right.

\* \* \* \* \* \*

THE COMPANIES' COUNSEL: ... I think this has gotten thrown out—this is the baby that's getting thrown out with the bath water.

He and I both can't agree to it, but I think we both want a ruling one way or another, and I think—that *National Union Fire v. Valdez* case, I don't know whether that controls or not. Maybe it does because—

THE COURT: **It's the same identical request.**

THE COMPANIES' COUNSEL: Okay. Well, they asked for the, quote, unquote, whole claims file. That's right.

THE COURT: Right. So you're going to have to ask for—

THE LAWYERS' COUNSEL: I will. I'll ask for specifics.

THE COURT: All right....

\* \* \* \* \* \*

THE COURT: ... Basically what [the Supreme Court] is doing is they're going the other way on stuff now. They're looking for what reasons not to do it. That's the way they're trending, and if this goes up on my question, I'll say, "What about this? It's too broad." Then we don't get to the merits....

The trial court issued the following order:

On December 20, 1993, the Court held a hearing on the [Companies'] motion for protection of [their] **entire "claims file[s],"** [the Companies'] motion for protection regarding the subpoena duces tecum of the **entire "file"** of the firm of Strasburger & Price, and [the Companies'] motion for protection of the **entire "file"** of the law firm of Coats, Rose, Yale, Ryman, & Lee, and the [Lawyers'] motion to compel the production of the same documents. On both motions, it is

ORDERED that [the Companies'] motion for protection is granted and [the Lawyers'] motion to compel production is denied, and any subpoena duces tecum issued requesting or requiring the production of the information be and are hereby quashed.

. . . .

(Emphasis added.)

### Analysis

It is clear from the foregoing that the trial court did not base his decision to protect the Companies' and law firms' files on a finding that the files were privileged and that the privilege had not been waived by offensive use. In fact, the trial court stated: "I'm going to tell you that my inclination is that most of the documents if properly requested though privileged are offensive use of the privilege, and maybe you can work that out." Rather, he expressed the basis of his decision thusly: "The Supreme Court [in *Valdez* ] ... said that when you have a privilege, offensive privilege thing like this, you have to make a detailed request, specific detailed request." Since the Lawyers had requested "entire files," and not specific documents, the trial court granted the Companies' motion for protection and denied the Lawyers' motion to compel.

We hold that the trial court abused his discretion in that he misconstrued the holding of *Valdez* and used that misinterpretation as a basis for erroneously granting the Companies' motion for protection.

*National Union Fire Ins. Co. v. Valdez* was an original mandamus action arising from a bad faith insurance case. An employee of Wal–Mart Stores, Inc., ("Wal–Mart") was injured on the job. Wal–Mart's workers' compensation carrier, National Union Fire Insurance Co. ("National Union"), disputed the extent of the employee's injuries. Dissatisfied with the results of his workers' compensation claim, he sued National Union for bad faith failure to pay benefits. The employee claimed, *inter alia,* that National Union had no reasonable basis for disputing his compensation claim. To counter this contention, National Union relied on the deposition testimony of a lawyer from the law firm that represented National Union in the underlying workers' compensation case. *Id.* at 459.

The employee served that law firm with a *subpoena duces tecum* requesting all records

from the compensation case, "including but not limited to the investigation file, the correspondence file and the pleadings file." The trial court directed National Union to submit the law firm files for *in camera* review. *Id.*

In addition to general objections as to each particular file, and specific objections as to certain documents, National Union claimed that the files in their entirety were privileged as attorney work product because the organization and labelling of the files, in addition to the selection of documents to include in the files, reflected the attorney's mental impressions, conclusions, opinions, and legal theories formed in preparation for trial. *Id.* at 460. After attempting an *in camera* review, the trial court complained of the lack of organization and ordered all the documents produced. The trial court apparently rejected National Union's argument that a request for an attorney's "entire file" from a particular case was a *per se* infringement on the attorney work-product privilege. *Id.* We note that the trial court also concluded that National Union waived its objections by failing to sufficiently index the files. However, this aspect of the case played no part in the Supreme Court's decision. *Id.* n. 4. National Union sought mandamus relief.

The Court held that "even if some of the documents in the law firm files would not otherwise be privileged, production of an attorney's entire file necessarily reveals the attorney's mental processes, thus invoking work-product protection." *Id.* The Court concluded that "National Union raised a valid work-product objection to producing the law firm files in their entirety ... [and] [t]he trial court abused its discretion in ordering production of these files." *Id.* at 461.

The Court went on to reject the employee's argument that National Union had waived its privilege by attempting to use it offensively. The Court held that National Union was relying on the law firms' files only to avoid the employee's claims, not to seek affirmative relief. *Id.* Therefore, the first element of the three-part test for waiver of privilege by offensive use was not met: waiver of privilege if (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information is such that, if be-

lieved by the fact-finder, would probably be outcome determinative; and (3) disclosure of the confidential information is the only means by which the aggrieved party may obtain the evidence. *Id.*, citing *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993) (orig. proceeding).

In sum, *Valdez* holds that it is a valid work-product objection to complain of a discovery request that seeks the "entire file" on a particular case from an attorney. An attorney's "entire file" is work-product privileged *per se*, subject to waiver through offensive use. This, we believe, is the central holding of *Valdez*. In the present case, the trial court interpreted *Valdez* to mean more than this. He read *Valdez* to say that a discovery request for an attorney's "entire file" was not only objectionable *per se*, but also, not subject to waiver through offensive use or failure to segregate.

We surmise that the trial court may have been misled by the following *dicta* in *Valdez:*

> Moreover, no legitimate purpose is served by allowing a party to discover an opponent's litigation file. Our decision today does not prevent a party from requesting specific documents or categories of documents relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's files. It does, however, prevent a party from requesting the **entire file**, which is almost certain to encompass numerous irrelevant and immaterial documents, such as transmittal letters and pleadings already on file with the court, as well as privileged information.

*Id.*

■ We first observe that this language appears in the *Valdez* opinion *before* the Court's discussion of the offensive-use waiver. The language should therefore be read as modulated by that discussion. Therefore, an attorney work-product privilege, whether derived from a discovery request for an attorney's "entire file" or from the nature of a particular document, can be waived by offensive use of that privilege.

In the second sentence of the paragraph of interest, the Court said: "Our decision today

does not prevent a party from requesting specific documents or categories of documents relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's files." This is consistent with the Court's earlier statement that "a document is not privileged simply because it is contained in an attorney's files." *Id.* at 460. Taking these statements together, we read the Court as saying that a party can discover specific *non*-privileged documents from a file even if that file is an *attorney's* file.

In the third sentence, the Court said: "[Our decision] does, however, prevent a party from requesting the entire file, which is almost certain to encompass numerous irrelevant and immaterial documents, such as transmittal letters and pleadings already on file with the court, as well as privileged information." This statement should be read with the Court's earlier remark: "[E]ven if some of the documents in the law firm files would not otherwise be privileged, production of an attorney's entire file necessarily reveals the attorney's mental processes, thus invoking work-product protection." *Id.* We read these two statements together, also considering the offensive-use waiver discussion that follows. So doing, we interpret the Court's meaning to be that, absent a waiver of privilege, a party may not discover an attorney's "entire file" because an attorney's "entire file" is privileged *per se* and, incidentally, would contain much irrelevant and immaterial information.

Finally, in the first sentence of the paragraph under discussion, the Court stated that "no legitimate purpose is served by allowing a party to discover an opponent's litigation file." Coupled with the Court's concern that an "entire file" would contain "numerous irrelevant and immaterial documents," we take the Court to mean that a request for an attorney's "entire file" is subject to challenge as overbroad as well as on work-product privilege grounds. As such, the request could be attacked as unduly burdensome, generating unnecessary expense, done for harassment or annoyance, or as an invasion of personal, constitutional, or property rights. *See* TEX.R.CIV.P. 166b(4). In the

present case, the trial court did not grant the Companies' protective order on grounds that the Lawyers' request was overbroad as such. Rather, the trial court seemed to believe that *Valdez* made a discovery request for any "entire file" absolutely unenforceable. He was convinced that *Valdez* prevented him from reaching the merits of the Companies' claim of privilege and the Lawyers' contrary contention of offensive use. We note that the trial court also applied *Valdez* to the Lawyers' request for the *Companies' claims files* even though *Valdez* dealt with an *attorney's litigation file* and the attorney's work-product privilege.

We take a different view of *Valdez* than did the trial court. We read *Valdez* as establishing that (1) it is a valid objection to a discovery request that the request be for an attorney's "entire file;" (2) such an objection successfully invokes the attorney's work-product privilege; (3) such privilege is subject to the offensive-use waiver, and (4) a discovery request for an attorney's "entire file" was also subject to overbreadth challenges.

■ In conclusion, we hold that the trial court abused its discretion in granting the Companies' protective order in that the motion was granted based on an erroneous interpretation of *Valdez*. The trial court's reliance on *Valdez* shortstopped further inquiry into the merits of the Companies' assertion of privileges and the countervailing issue of the Companies' waiver of privilege by offensive use.

Our decision to direct the trial court to vacate his protection order should not be read as ordering him to compel production of the "entire files" of the Companies and their law firms. Nor do we suggest that the Lawyers' discovery requests are immune from challenge on overbreadth-related grounds or that the Companies' asserted privileges are not subject to challenge on the basis of waiver by offensive use. We understand that the companies have tendered to the trial court, for *in camera* review, some 600 indexed documents from their claims files as well as one box and one notebook from Coats' and Strasburger's litigation files. It was unclear from the record to what extent either the trial

court or the special master examined these materials. We therefore return this discovery matter to the discretion of the trial court to address the issues preempted by the issuance of the protective order.

We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate his order granting the Companies' motion for protection. We anticipate that the trial court will abide by our decision. Mandamus will issue only if he does not.