**Opinion filed February 29, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00254-CV
_____

## IN RE DR. VICTOR L. LEE AND LEE ORTHODONTICS, PLLC

**Original Mandamus Proceeding**

### O P I N I O N

This mandamus proceeding arises from the trial court's order requiring a Professional Limited Liability Company to waive its claims for affirmative relief unless its member/owner agreed to waive his privilege against self-incrimination in connection with allegations brought against him for sexual assault. On January 29, 2018, Melissa Barnes, the Real Party in Interest, sent an e-mail to Morris Dental Associates using a Gmail account bearing the name "kris zander" (kriszzander@gmail.com). The e-mail expressed "shock" that Morris Dental was referring children to Relator Victor L. Lee, an orthodontist in Abilene, and indicated

that Dr. Lee had been arrested for family violence and that he was well known in the community and to law enforcement for "crimes against multiple women." Dr. Lee's petition for mandamus indicates that he and Barnes are former intimate partners, and Barnes claims in her petition that she is one of his victims.

Barnes filed a lawsuit against Dr. Lee and Lee Orthodontics, PLLC and sought to depose Dr. Lee. Dr. Lee appeared for the deposition but, to the vast majority of questions asked, invoked the privilege against self-incrimination. *See* U.S. CONST. amend. V; TEX. CONST. art I, § 10.[1] Relator PLLC, of which Dr. Lee is a member and owner, brought claims against Barnes for tortious interference with contract and defamation arising in part out of Barnes' e-mail to Morris Dental. Barnes then sought to depose Dr. Lee again in connection with PLLC's claims.

In this mandamus proceeding, we are asked to determine whether the trial court abused its discretion when it ordered that Relators "elect to litigate affirmative claims against [Barnes], submitting to discovery and waiving Fifth Amendment privilege, or whether [Relators] elect to maintain the Fifth Amendment privilege." Stated otherwise, did the trial court abuse its discretion when it ordered that PLLC's claims against Barnes would be dismissed unless Dr. Lee agreed to waive his privilege against self-incrimination?[2]

---

[1]Although there are similarities between the privilege against self-incrimination in Article I, Section 10 of the Texas constitution and the Fifth Amendment of the United States Constitution, Article I, Section 10 and the Fifth Amendment are not identical. *See Thomas v. State*, 723 S.W.2d 696, 702 (Tex. Crim. App. 1986) (while Article I, Section 10 "may sometimes be comparable in scope to the Fifth Amendment," Texas courts interpret the state constitution by engaging in an independent examination of the history, policy, and precedent surrounding state law that is relevant to Article I, Section 10). Nevertheless, because the difference between the two and the scope of the privilege as described in each are inapposite for purposes of the issue in this proceeding (and for ease of reference), we refer to them collectively as "the privilege against self-incrimination."

[2]Relators filed in this court an opposed motion to stay the trial court's order. We granted the motion and stayed enforcement of the order pending further order of this court or final disposition of this mandamus proceeding.

*Factual Background*

In her petitions, Barnes claims that Dr. Lee assaulted her on multiple occasions between May 2016 and May 2017. She alleges that, on at least one of these occasions, Dr. Lee video-recorded a sexual assault, which occurred while she was unconscious. Both Dr. Lee and PLLC deny the allegations.

On January 29, 2018, Barnes sent the e-mail in question to Morris Dental Associates. The e-mail read as follows:

> I recently was made aware of your affiliation with Dr Lee of Lee Orthodontics. It's shocking to find out you would recommend CHILDREN who are patients of yours to a man who has a criminal record and was arrested back in September 2017 for family violence and incidents involving young children. The cases are all still active and the state of Texas has 4 criminal complaints against this man. He is also WELL KNOWN with the community and law enforcement for crimes against multiple women. Some of who [sic] are finally coming forward thanks to the #metoo campaign going on across the country.
>
> I know you to be a great man, and your family has a great reputation in the area. So, I would bargain that you were somehow unaware of his background.

On the following day, Courtney Shelby, an employee of Morris Dental, forwarded the e-mail to PLLC.

Dr. Lee and PLLC also maintain that, on April 3, 2018, a Facebook user under the name of "Kendall" created a page called "Local Mugshots." The first post on the new page includes what appears to be a police photograph of Dr. Lee. The page is titled "Seems to be a local orthodontist . . . BUSTED." In a response to a comment on the page, the Local Mugshots account also indicated that "his ex wife also has had several restraining orders [against him]."

In response to these events, Dr. Lee and PLLC filed a petition under Rule 202 of the Texas Rules of Civil Procedure requesting the depositions of Alphabet, Inc.[3] and Facebook, Inc. for the purpose of identifying the account owners. Suspecting that Barnes may have been involved in one or both communications, Dr. Lee and PLLC also sought the deposition of Barnes, who at the time was known by the surname Coelho.

Barnes answered with a general denial and filed a counterclaim against Dr. Lee and PLLC for multiple causes of action. The trial court denied the Rule 202 petition but allowed Barnes to convert her response into a lawsuit for damages—Barnes's suit alleged various claims, including assault, false imprisonment, terroristic threats, and invasion of privacy by Dr. Lee and negligence by Dr. Lee and by PLLC.

On January 25, 2021, Dr. Lee appeared for a deposition. During the deposition, Dr. Lee repeatedly asserted the privilege against self-incrimination. Dr. Lee asserted the privilege in connection with 103 out of approximately 108 total questions—primarily those about his alleged sexual assaults of Barnes. Following the deposition, Dr. Lee and PLLC filed counterclaims against Barnes for tortious interference and defamation.

In early 2023, the parties each filed motions to compel. Dr. Lee and PLLC sought access to Barnes's cell phone and computer in order to obtain the alleged video of the sexual assault.[4] Barnes sought to compel written discovery from Dr. Lee and, in light of the counterclaims, sought to compel Dr. Lee "to appear for

---

[3]Alphabet, Inc. is the owner of Google, and is also the service provider for Gmail.

[4]Among other things, Lee and PLLC sought to establish that the video of the alleged sexual assault was made by Barnes, raising a question as to whether she consented to the sexual activity in the video, as well as the creation of the video itself.

[another] deposition and provide full and complete answers." Alternatively, Barnes asked that Dr. Lee "be barred from presenting evidence relating to his counterclaims" as a result of the offensive use of the privilege against self-incrimination. Thereafter Dr. Lee, but not PLLC, nonsuited his counterclaims against Barnes.

On March 15, 2023, the trial court conducted a hearing on the motions to compel. The mandamus record does not include a transcript of the hearing. Approximately six months later, Barnes filed a motion that requested the trial court to enter an order based on the outcome of the hearing. In the motion, Barnes maintained that "[t]he Court orally ruled to compel" the deposition of Dr. Lee, and that Dr. Lee's counsel had since refused to cooperate or approve of Barnes's proposed orders relating to the ruling. In response, Dr. Lee filed a motion to quash his deposition and to compel discovery from Barnes.

On October 5, 2023, the trial court conducted a hearing on the motion to enter an order as well as Dr. Lee's motion to quash. At the outset of the hearing, the trial court indicated that, among other things, it had ruled in the previous hearing that Dr. Lee would be deposed. In response, counsel for Dr. Lee asked the trial court to defer a ruling on Dr. Lee's assertion of the privilege against self-incrimination, as well as his second requested deposition, until after Dr. Lee obtained testimony from Barnes and other witnesses and secured a ruling on a motion for summary judgment against Barnes. The trial court then indicated that, since Dr. Lee stood to benefit from the counterclaims filed and maintained by PLLC, it would strike those counterclaims unless Dr. Lee testified. Thereafter, the trial court entered an order requiring Dr. Lee to file a written election indicating whether he would waive his

5

"Fifth Amendment privilege."[5]  The order further provided that if Dr. Lee did not elect to waive his Fifth Amendment privilege within fourteen days, PLLC's affirmative claims would be "summarily dismissed."

The order also ordered both parties to produce electronic devices[6] that were "in use at the time of the occurrence made basis of this suit" for examination by a neutral, third-party forensics expert.  It indicated that the contents of Dr. Lee's devices would be designated as "Confidential Discovery," which could only be disclosed to the parties, their attorneys, the trial court, and related staff.  Likewise, the order provided that any testimony given by Dr. Lee would be "subject to a protective order" that is "substantially equivalent" to its other orders relating to Dr. Lee's devices.

Following entry of the order, Dr. Lee and PLLC filed this petition for writ of mandamus.

## *Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances."  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.  *In re*

---

[5]The order did not explicitly require a waiver of rights under Article I, Section 10 of the Texas constitution.

[6]The mandamus petition does not contest or brief the part of the trial court's order compelling the production of electronic devices or the trial court's designations of "confidential discovery."

6

*Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

"[W]hen a trial court imposes discovery sanctions which have the effect of *precluding a decision on the merits of a party's claims*—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment."[7] *Walker*, 827 S.W.2d at 843.

*The Election Order*

Dr. Lee and PLLC raise a single issue, alleging that the trial court's October 5, 2023 order was an abuse of discretion. In support of this issue, they assert five arguments, the first four of which relate to the order requiring Dr. Lee to make an election regarding the assertion of his privilege against self-incrimination.

First, Dr. Lee and PLLC argue that it was error to order Dr. Lee to appear for a second deposition "because a co-defendant [PLLC] has brought counterclaims." In Texas, discovery may be sought in connection with any matter that is relevant, as well as any information that appears to be "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Furthermore, a deposition of "any person or entity" may be taken to further such discovery. *Id.* R. 199.1(a); *see also id.* R. 192.1(a)(f) (listing "oral or written depositions" as a

---

[7]The trial court's order does not impose an immediate sanction. Rather, it threatens to impose a sanction unless Lee waives his privilege against self-incrimination. Here, we held that such a ruling is sufficiently analogous to cases involving the direct imposition of death penalty sanctions to justify this court's consideration of the trial court's "elective" sanction on mandamus.

permissible form of discovery). Even where relevant evidence is sought, a party may object to discovery requests, including notices of deposition, that are "unreasonably cumulative or duplicative." *Id.* R. 192.4(a).

In this case, neither Dr. Lee nor PLLC have objected to Dr. Lee's second deposition on the grounds that it would result in unreasonably duplicative discovery, nor is it clear—given Dr. Lee's assertion of the privilege against self-incrimination in his first deposition—that such an objection would have been successful. Because the Texas Rules of Civil Procedure do not contain a prohibition against deposing a witness more than once, we are unpersuaded that the trial court abused its discretion merely because Barnes sought a deposition of Dr. Lee in connection with the counterclaims of PLLC.

Dr. Lee and PLLC also argue that the trial court's order is an abuse of discretion because it requires Dr. Lee "to waive his constitutional rights against self-incrimination at a deposition." This characterization of the trial court's order is inaccurate. The trial court has not *ordered* Dr. Lee to waive his constitutional rights. Accordingly, the second argument articulated by Dr. Lee and PLLC is inapplicable.

In their third argument, Dr. Lee and PLLC assert that the trial court committed an abuse of discretion when it determined that Dr. Lee and PLLC are "one and the same." This characterization of the trial court's rulings is also inaccurate. The trial court's order does not include any findings regarding the relationship between Dr. Lee and PLLC, or that they are "one and the same." In the October 5 hearing, the trial court recognized that there is a "legal difference" between Dr. Lee and PLLC, but also inquired about the "practical difference" between the two parties, indicating a concern that Dr. Lee stood to benefit from any claims for affirmative relief that were asserted by PLLC. Counsel for Dr. Lee and PLLC then conceded

8

that Dr. Lee would, in fact, stand to benefit from the counterclaims asserted by PLLC.

While the trial court's comments describe the basis for its conclusion that PLLC could be subjected to sanctions based on Dr. Lee's refusal to testify, they also recognize that Dr. Lee and PLLC are separate legal entities, which does not constitute a determination that they are "one and the same."

In their fourth argument, Dr. Lee and PLLC assert that the trial court committed an abuse of discretion by issuing a sua sponte directive that PLLC "would receive death penalty sanctions if Dr. Lee did not waive his constitutional rights." *See In re Bledsoe*, 41 S.W.3d 807, 812 (Tex. App.—Fort Worth 2001) ("A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the case on the merits."). Contrary to their second and third arguments, this fairly articulates the gravamen of the trial court's order.

In civil matters, a party that refuses to respond to questions in an oral deposition normally does so at the risk of being sanctioned. *See* TEX. R. CIV. P. 215.1(b)(1)(B). However, under appropriate circumstances, a party may refuse to answer a question that is posed during a deposition to preserve a privilege. *See id.* R. 199.5(f) ("An attorney may instruct a witness not to answer a question during an oral deposition only if necessary to preserve a privilege.").

A witness has a right to assert the privilege against self-incrimination in both civil and criminal trials if an answer might subject the witness to criminal liability. *Kastigar v. U.S.*, 406 U.S. 441, 444–45 (1972); *In re Commitment of Lowe*, 151 S.W.3d 739, 745 (Tex. App.—Beaumont 2004, pet. denied). Such a right extends

to and includes disclosures that could lead to other evidence that might be used against the witness. *Kastigar*, 406 U.S. at 444–45.[8]

### The Assertion of the Privilege Against Self-Incrimination in Civil Trials and Rule 513 of the Texas Rules of Evidence

Before reaching the question of whether PLLC can be sanctioned for Dr. Lee's assertion of the privilege against self-incrimination, we review the manner in which Dr. Lee's assertion of the privilege could impact the trial of this case *independent* of any sanctions. A clear understanding of the role of the privilege against self-incrimination in a civil case should be considered and may influence the trial court's determination of the need for and the severity of any proposed sanctions.

In a civil case, the parties may comment on a person's assertion of the privilege against self-incrimination in front of the factfinder, and a factfinder may draw inferences from such assertion. TEX. R. CIV. P. 513(c). Rule 513(c), entitled "Claim of Privilege Against Self-Incrimination in a *Civil Case*," is critical in the case before us. *See id.* (emphasis added).[9] Thus, in a civil case in Texas, a jury may be informed that a party is invoking their Fifth Amendment privilege against self-incrimination, and questions at trial may "necessitate" that the privilege be invoked

---

[8]In their petition for mandamus, Dr. Lee and PLLC point to case law indicating the trial court can only compel testimony over the assertion of a privilege based on a question-by-question basis, and then only if the trial court is "perfectly clear" that the answer will not incriminate. *See Ex parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975). However, the procedures described in *Butler* apply to questions of whether the witness is asserting the privilege in good faith. *Id.* ("The judge is entitled to determine whether the refusal to answer appears to be based upon the good faith of the witness and is justifiable under all of the circumstances."). In this case, no question has been raised as to whether the privilege is applicable to Barnes's inquiries. And as to a second deposition of Dr. Lee, it is unknown what duplicative questions might be asked. But in the prior deposition of Dr. Lee, without so ruling, it may be argued in good faith that to some 95 of the approximately 108 questions propounded to him, a legitimate use of the privilege against self-incrimination was asserted.

[9]It is notable that, unlike Rule 513(c), neither the proposed Federal Rules nor the Uniform Rules of Evidence have a similar provision for either allowing or prohibiting comments on and inferences to a party's invocation of a privilege. *See* FED. R. EVID. 501, 502.

in front of the jury. *See id.* R. 513(c); *see also, e.g.*, *Wilz v. Flournoy*, 228 S.W.3d 674, 676–77 (Tex. 2007); *Univ. of the Incarnate Word v. Redus*, 654 S.W.3d 169, 183 (Tex. App.—San Antonio 2022, no pet.); *Smith v. Smith*, 720 S.W.2d 586, 594 (Tex. App.—Houston [1st Dist.] 1986, no writ).[10] Further, the rule permits comments and negative inferences about the reasons why the party might have invoked the privilege. *Tex. Cap. Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 773 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (jury was entitled to draw negative inferences from a witness's invocation of the privilege against self-incrimination and the refusal to answer deposition questions).

The meaning of "party" under Rule 513(c) could extend to the parties' agents, representatives, and employees. In *Wil-Roye Inv. Co. II v. Wash. Mut. Bank*, 142 S.W.3d 393, 404–05, 407 (Tex. App.—El Paso 2004, no pet.), the Eighth Court of Appeals held that the factfinder may draw an adverse inference from evidence that a party's *agent* has exercised the Fifth Amendment privilege, at least when the questions "substantially relate to a *party's* claim or defense." *Id.* at 406–07 (emphasis added). The plaintiffs in *Wil-Roye* introduced significant portions of the deposition testimony of two witnesses who acted as the plaintiffs' agents but argued that the opposing party could not introduce evidence that the plaintiffs' agents had asserted their Fifth Amendment privilege against self-incrimination. *Id.* at 403. The court reasoned that the plaintiffs "would have obtained an unfair advantage had they

---

[10]As noted in *Smith*, 720 S.W.2d at 594:

Since the present case was a civil proceeding, any of the appellants, including those with pending criminal charges, could have been called to testify. . . . For the parties who were called or could have been called to testify, TEX. R. EVID. 513(c) permits the asking of questions that would necessitate the assertion of the privilege against self-incrimination before the jury. (internal citations omitted).

11

been able to present favorable portions of [witness's] deposition testimony while precluding cross-examination." *Id.* at 407. The court noted that admissions by a party's agent under Rule 801(e)(2) were admissible, and it analogized an agent's admission to the invocation of the privilege against self-incrimination by that agent. *Id.* at 404. It concluded that the special relationship between the plaintiffs and the two witnesses was such that the factfinder could draw an adverse inference under Rule 513(c). *Id.* at 404–05. The court also stated that "[a]llowing the fact-finder to draw an adverse inference against Appellants [did] not in any way infringe upon the privilege claimed." *Id.* at 407; *see also Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481–82 (8th Cir. 1987) (former director to invoke the privilege before the jury because of the witness's relationship to the litigation rather than a technical relationship to the plaintiff); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521–22 (8th Cir. 1984) (allowing an adverse inference from a nonparty witness's invocation of the privilege against self-incrimination when the nonparty has a special relationship with a party).

As such, if this case proceeds to trial,[11] (1) Dr. Lee may find it necessary to assert the privilege against self-incrimination, and the trial court may allow the invocation to occur in the presence of the jury or allow Barnes to comment on or suggest that Dr. Lee asserted the privilege at the deposition, and (2) the trial court will have broad discretion, upon request, to consider instructing the jury that it may make adverse inferences against PLLC based on Dr. Lee's assertion of the privilege. *See* TEX. R. CIV. P. 513(c); State Bar of Texas, *Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Workers' Compensation* PJC 1.11, & cmt. (2022). These options are available to the trial court independently of its discretion

---

[11]Barnes has made a demand for a jury trial.

to impose sanctions, and the trial court has broad discretion to apply them if and when it is necessary.

*Offensive Use of Privilege and Sanctions*

Like other privileges, the privilege against self-incrimination is subject to limitations when it is used *offensively* in a civil case, that is, where the party that is asserting the privilege is also the party asserting a claim for affirmative relief. *See Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995).

At issue is the propriety of sanctioning a business entity for the decision of an individual to assert the privilege against self-incrimination. Here, the trial court's order required that *an individual* elect to waive his claim of privilege against self-incrimination; otherwise, failing such an election within the deadline given, the affirmative claims alleged against Barnes by PLLC, *a separate business entity* of which the individual is a member, "shall be summarily dismissed." While the fact scenario here is unique, we are unaware of any Texas case in which one party was given death penalty sanctions, or put to such an election, based on the claim of privilege asserted by another party. No such sanction or the potential of striking the claims of the business entity was at issue in *Wil-Roye*, rather, the special relationship of the party's agent was discussed only in the application of Rule 513(c).

Evidence that the tort claims of Barnes occurred in the course and scope of professional services provided to her by the PLLC was not presented at the hearing. Importantly, we note that the trial court granted summary judgment against Barnes on the issue of PLLC's respondeat superior responsibility for the torts allegedly committed by Dr. Lee as pled by Barnes. Further, there are no pleadings provided in the record by Barnes that somehow there is a "piercing [of] the corporate veil" as

it relates to PLLC as a limited liability company, a theory that must be specifically pleaded or it is waived, unless it is tried by consent. *Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 86 & n.11 (Tex. App.—Waco 2007, no pet.); *see Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991); *Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 572 (Tex. App.—El Paso 2017, pet. denied). Further, veil piercing is a fact-specific inquiry, and whether a corporate fiction— where individuals abuse the corporate privilege—may be disregarded is typically not a question of law, but rather a question of fact. *Castleberry v. Branscum*, 721 S.W.2d 270, 271, 273, 277 (Tex. 1986), *superseded by statute on other grounds*, TEX. BUS. ORGS. CODE ANN. § 21.223 (West 2020); *HHH Farms, L.L.C. v. Fannin Bank*, 648 S.W.3d 387, 409 (Tex. App.—Texarkana 2022, pet. denied); *Clement v. Blackwood*, No. 11-16-00087-CV, 2018 WL 826856, at *6 (Tex. App.—Eastland Feb. 8, 2018, pet. denied) (mem. op.).

Other than his membership in PLLC, of which there was small mention during the hearing, the record includes no documentation in the form of bylaws, membership structure, voting rights or governing persons, etc., of PLLC. That Dr. Lee, as a member and owner of PLLC, might benefit if PLLC recovers in the suit—as this may be true, and would be expected, in the case of any PLLC seeking a recovery of damages and the possible ultimate benefit to the members thereof—is not sufficient evidence to judicially merge the Relators.

In *Republic Ins. Co. v. Davis*, the supreme court warned that "an offensive use waiver of a privilege should not lightly be found." 856 S.W.2d 158, 163 (Tex. 1993). It then set out a three-part test for determining whether a party has engaged in an

offensive use that justifies the imposition of sanctions.[12]  *Id.*  As an initial requirement, affirmative relief must be sought by "*the party* asserting the privilege." *Id.* (emphasis added).  "Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted."  *Id.*  Finally, disclosure of the privileged information "must be *the only means* by which the aggrieved party may obtain the evidence." *Id.* (emphasis added).  If the three-part test is satisfied, a court may issue an order requiring a party to elect "whether to maintain the privilege or risk suffering a sanction."  *Denton*, 897 S.W.2d at 761.  But based on this record, and without more, we cannot say that even the first requirement of *Republic*'s three-part test has or can be satisfied.

Regardless, even the proper application of the *Republic* standard would not fully resolve the issue. The trial court must still determine whether the form of sanctions selected were appropriate.  *See Denton*, 897 S.W.2d at 763 (although the offensive use standard was satisfied, "[t]he question remains . . . whether the sanction imposed by the trial court in this case was an appropriate one").  In this case, the trial court did not merely rule that PLLC would be sanctioned if Dr. Lee failed to provide deposition testimony.  It also determined that, if this occurred, the claims of PLLC would be summarily dismissed. In that regard, and without deciding whether *Republic* was properly applied in this instance, we have determined that the trial court's order was an abuse of discretion.

---

[12]The *Republic* case involved an alleged offensive use of the attorney-client privilege.  However, the same standards that were articulated in *Republic* may be applicable to the offensive use of the privilege against self-incrimination.  *See Denton*, 897 S.W.2d at 761-62 (applying *Republic* to an assertion of the privilege against self-incrimination).

As is the case with all sanctions, any penalty imposed based on the offensive use of a privilege must be "just." *Denton*, 897 S.W.2d at 763; *see TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916–17 (Tex. 1991) (orig. proceeding)

In *Denton*, a party plaintiff in a wrongful termination case, filed suit against his employer and invoked the Fifth Amendment when he was asked about issues of criminal wrongdoing on his part. The court held that "a trial court has the authority to respond to an offensive use of an evidentiary privilege by imposing the sanctions authorized by the rules of procedure." *Denton*, 897 S.W.2d at 759. The trial court had dismissed Denton's wrongful termination case when he, not a separate person or entity, asserted his Fifth Amendment privilege in response to discovery requests. *Id.* at 759. The court of appeals reversed the trial court's order and remanded for further proceedings, and while the supreme court affirmed the court of appeals remand, they did so "for different reasons" and concluded:

> [A] trial court can ultimately dismiss a party's claims for failing to comply with an order for discovery [by asserting its privilege against self-incrimination], but only after first satisfying the procedures governing sanctions. In addition, before imposing a sanction, the trial court must consider whether remedial steps short of sanctions can alleviate the problem. Then, assuming they cannot, the trial court must determine whether a lesser sanction would satisfy the legitimate purpose of the sanction before imposing a death penalty sanction.

*Id.* The *Denton* court concluded that the trial court should consider a number of factors, including the nature of the questions asked, the privilege asserted, whether more narrow questions could serve the defendant's discovery needs, and whether the privilege is asserted against a bona fide fear of self-incrimination (as opposed to an effort to merely avoid discovery or create delay). *See id.* 763 (citing *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir.1979)). The trial court must also weigh the unfairness to a party if trial were to proceed and must consider

16

remedies that could be imposed during trial, such as (1) prohibiting a party from introducing evidence on matters about which the party asserted his privilege[13] or (2) allowing a civil jury to make a negative inference from the assertion of the privilege. *Id.*; *see also Wehling*, 608 F.2d at 1087; *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

Additionally, the trial court "should weigh options for delaying civil proceedings during the pendency of criminal investigations or parallel criminal proceedings," considering the statute of limitations, as well as the impact of delay on the defendant's ability to prepare a defense. *Denton*, 897 S.W.2d at 763 (citing *Wehling*, 608 F.2d at 1087).

"Finally, the trial court should recognize that it would have options to impose remedies in the future if any delay afforded the plaintiff resulted in unanticipated or extraordinary hardships. In other words, if after an extended abatement a defendant cannot prepare a defense, the trial court should determine at that point whether a dismissal is appropriate as the only way to fairly balance the plaintiff's and defendant's rights." *Id.* (citing *Wehling*, 608 F.2d at 1089).

The *Denton* court described these considerations as those that a trial court should weigh before imposing any other sanction. *Id.* In this regard, "a direct relationship must exist between the offensive conduct and the sanction imposed." *TransAmerican*, 811 S.W.2d at 917. Moreover, the sanction must not be excessive. *Id.* In other words, it "should be no more severe than necessary to satisfy its legitimate purposes." *Id.* The question of severity is particularly important when

---

[13]As a practical matter, if Dr. Lee may not testify regarding matters about which he has asserted his right against self-incrimination, the trial court should consider how that may negatively affect PLLC's ability to prove the elements of business disparagement including that the alleged social media postings of Barnes were false. *See In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015). While not a trial court sanction imposed upon PLLC, there is consequence to PLLC resulting from Dr. Lee asserting his privilege.

considering death penalty sanctions, which impose "the most devastating [penalties] a trial court can assess against a party." *Id.* at 917–18. "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.* at 918 (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 209 (1958)). Thus, discovery sanctions cannot be a substitute for the adjudication of a claim "unless a party's hindrance of the discovery process justifies a presumption that its claims . . . lack merit." *Id.* Circumstances that justify the imposition of a death penalty sanction include a party's "flagrant bad faith" and counsel's "callous disregard for the responsibilities of discovery." *Id.* In short, "before dismissing a cause of action, the trial court must be convinced that less burdensome remedies would not be effective in preventing unfairness to a defendant." *Denton*, 897 S.W.2d at 763 (citing *Transamerican*, 811 S.W.2d at 917; *Wehling*, 608 F.2d at 1088).

Several of the considerations that are described in *Denton* were asserted at the hearing and considered or addressed by the trial court. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003) ("the record should contain some explanation of the appropriateness of the sanctions imposed"). For example, the trial court rejected any possibility that the testimony of Dr. Lee could be narrowly tailored in a way that avoids the privilege. *See Denton*, 897 S.W.2d at 763. Likewise, Relators informed the trial court that the applicable statute of limitations to indict Dr. Lee for the alleged sexual assault was ten years; the trial court implicitly considered, and rejected, the proposition of delaying trial for that reason—that the statute of limitations would expire on any alleged sexual assaults committed by Dr. Lee that are the subject of the alleged defamatory statements. *Id.*; *see* TEX. CODE CRIM. PROC. ANN.

18

art. 12.01(2)(E) (West Supp. 2023) (establishing a ten-year statute of limitations on the presentment of indictments for sexual assaults, with certain exceptions). Nonetheless, even if we were to assume that PLLC is subject to sanctions under *Republic*, we conclude that the trial court's order was an abuse of discretion under the standards set out in *Denton* for two reasons, and we direct the trial court to vacate its October 30 order to the extent that it orders that PLLC's claims will be dismissed unless Dr. Lee waives his right against self-incrimination.

First, the trial court should properly weigh Dr. Lee's concerns regarding the potential for the prosecution for any sexual assault offense. During the hearing on the motion to compel, the trial court inquired about two criminal charges that had been brought against Dr. Lee in connection with Barnes's allegations. According to counsel for Dr. Lee, both of those charges had been resolved.[14] However, Dr. Lee had not been charged with sexual assault. After counsel for Dr. Lee indicated that the district attorney could still indict him with sexual assault within the ten year limitations period, the trial court suggested that no harm would result from a waiver unless the prosecutions occurred, and stated that it would be "willing to risk" that no charges would ever be filed.

Although the trial court may be correct, that the prospects of future prosecutions are unlikely, it should not limit its consideration to an all-or-nothing gamble that no harm will result from a waiver of the privilege. Rather, the trial court's role is to consider all of the factors described above, including the risk of future prosecutions, and then to fashion an appropriate sanction based on the totality of the circumstances. *See Denton*, 897 S.W.2d at 763; *see also Wehling*, 608 F.2d

---

[14]Counsel informed the trial court that one of the charges had resulted in a guilty plea and the other had resulted in a verdict of "not guilty."

at 1087–88. When the trial court dismissed the threat of future prosecution as an acceptable risk, rather than acknowledging it as an important factor for consideration, it abused its discretion.

Additionally, regardless of the issue of the separate nature of Dr. Lee versus PLLC as an entity, the trial court failed to consider whether lesser sanctions would be appropriate under these circumstances. For example, the record does not indicate that the trial court considered the possibility of (1) prohibiting Dr. Lee from introducing evidence on the matters about which he asserted his privilege, or (2) allowing the jury to make a negative inference from the assertion of the privilege.[15] *See Denton,* 897 S.W.2d at 763; *see also Wehling*, 608 F.2d at 1088–89.

The *Denton* court recognized the possibility that death penalty sanctions could be issued in response to the assertion of the privilege against self-incrimination.[16] 897 S.W.2d at 759. However, such a sanction is particularly harsh in this context. We have not found any precedent since *Denton* that has resulted in the imposition of death penalty sanctions based on the assertion of the privilege against self-incrimination, and we are likewise hard-pressed to imagine any circumstances where the unfairness to the other party resulting from the assertion of the privilege, standing

---

[15]The trial court's order granting the motion to compel states that "[n]o less-burdensome remedy would be effective in preventing unfairness to [Barnes]." However, this finding precedes the ruling on the motion to compel, and it is not clear that it refers to the election order. Furthermore, there is no explanation as to why a lesser remedy would be ineffective, and we do not believe that a generalized statement of this nature constitutes an adequate showing that less-burdensome remedies have been taken into account. *See Mayer*, 104 S.W.3d at 883.

[16]Three justices dissented in *Denton*, all indicating that the offensive use doctrine does not apply to the privilege against self-incrimination. 897 S.W.2d at 764. They reasoned that, since the privilege arises out of the state and federal constitutions, rather than state rules, the courts should not sanction a witness's choice to assert the privilege. *Id.*

20

alone, could not be remedied by an appropriate application of Rule 513(c) and/or lesser sanctions.

We also recognize that in *Henson v. Citizens Bank of Irving*, 549 S.W.2d 446, 449 (Tex. App.—Eastland 1977, no writ), we concluded that a party that is attempting to assert the privilege against self-incrimination should be given "the option of either answering or suffering dismissal." However, that case is distinguishable as it did not involve a dichotomy of entities asserting privilege and suffering dismissal. Further, several years after *Henson* was issued, the supreme court issued *Denton*, where it announced the multi-factor approach to rendering sanctions in offensive use cases that we have described above.

*Notice of the October 5, 2023 Hearing*

In their fifth argument, Dr. Lee and PLLC complain that PLLC did not receive adequate notice that sanctions would be considered during the hearing on October 5, 2023. Because we are requiring the trial court to vacate the election portion of its order, it is not necessary for us to reach this argument, and we trust that the trial court will provide adequate notice of any future hearings regarding the imposition of sanctions against PLLC.

*Trial Court Considerations*

After the trial court vacates the election portion of its order, the trial court should specifically consider whether a lesser form of sanctions can and should be imposed. In so doing, the trial court should be aware of the options that are available under the rules of evidence, specifically Rule 513(c), and applicable case law, regardless of whether it chooses to impose sanctions. Additionally, and in any event, the trial court should be aware that the purpose of the sanction is not to penalize Dr. Lee or PLLC for the assertion by Dr. Lee of the privilege against self-

21

incrimination, but instead to "ensure that the civil proceeding remains fair." *Denton*, 897 S.W.2d at 760. The trial court may also choose to defer its decision and proceed to trial and impose any necessary remedies as the evidence develops. *See id.* at 763.

*This Court's Ruling*

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order to the extent that it orders that PLLC's claims will be dismissed unless Dr. Lee waives his right against self-incrimination. The remainder of the trial court's October 30, 2023 order remains undisturbed. Mandamus will issue only if the trial court fails to act by March 11, 2024.


W. BRUCE WILLIAMS

JUSTICE


February 29, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

22